IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THOMAS C. PORTA, et al., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANDREW D. BARTH, et al., | ) | No. 05-14210C |
| | ) | & No. 05-759C |
| Plaintiffs, | ) | |
| | ) | CONSOLIDATED |
| v. | ) | |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Defendant, the United States, respectfully requests that the Court deny plaintiffs' motion for leave to file an amended complaint, pursuant to Rule 15 of the Rules of the Court of Federal Claims ("RCFC").

## QUESTION PRESENTED

Whether this Court should deny plaintiffs' motion for leave to file an amended complaint under RCFC 15 in light of the futility of the amendment, the undue prejudice to the United States of permitting the amendment, and plaintiffs' undue delay in seeking amendment.

## STATEMENT OF FACTS[1]

Plaintiffs filed an amended complaint in April 2005. In that complaint, they set forth one cause of action for failure to pay overtime wages in violation of the Fair Labor Standards Act, 29

[1] We set forth only those facts relevant to resolution of this motion. Enclosed in an Appendix is the amended complaint ("Am. Compl.") filed by plaintiffs in April 2005, a copy of the proposed amended complaint ("Prop. Am. Compl.") provided by counsel for plaintiffs on August 10, 2007, and a copy of the September 24, 2004 Declaration of Wayne A. Coleman produced to plaintiffs.

U.S.C. § 201 et seq. ("FLSA"). Am. Compl. 4. In that complaint, they alleged that the United States had willfully failed to pay overtime compensation for training sessions at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. Am. Compl. ¶¶ 24-25.

The parties then briefed the question whether this action should proceed as a class action. It was determined that the action should proceed as a collective action, and the Court determined the appropriate form of notice to be sent to potential plaintiffs. In the meanwhile, the parties proceeded with discovery. During discovery, plaintiffs sought communications between Government pay personnel and employees who attended FLETC training. These communications concerned the Government's intentions to make back pay-plus-interest payments to employees who had attended FLETC. None of these communications contained any promise to pay employees liquidated damages. The United States did not seek or obtain discovery from plaintiffs regarding their understanding of the representations of Government pay personnel or any reliance thereupon. Discovery closed August 22, 2007. See Joint Status Report of August 22, 2007 (Docket No. 103).

On August 10, 2007, counsel for plaintiffs sent counsel for the United States a proposed amended complaint in this matter. Prop. Am. Compl. The proposed amended complaint includes the following factual allegations not contained in the April 2005 complaint:

> 20. Defendant misrepresented to Plaintiffs that they were not entitled to payment for the sixth day of training under the FLSA.
>
> 21. Plaintiffs relied on Defendant's misrepresentation.
>
> 22. Defendant informed Plaintiffs in 2003 that they were entitled to overtime pay under the FLSA for the sixth day of training at the FLETC.

> 23. Defendant promised to pay Plaintiffs in compliance with FLSA for the sixth day of training at the FLETC.
>
> 24. Plaintiffs relied on Defendant's promise to fulfill its statutory obligation under the FLSA.
>
> 26. During the time that Plaintiffs were employed by Defendant, Defendant did not maintain in the workplace a display containing notices of employee rights to receive minimum wage and overtime, as required under the FLSA.

Prop. Am. Compl. ¶¶ 20-24, 26. In addition, the proposed amended complaint includes a cause of action for breach of contract. Prop. Am. Compl. 4. In their motion, plaintiffs assert that this Court should grant them leave to amend their complaint to "include allegations supporting equitable tolling and breach of contract." Pl. Mot. 1.

## ARGUMENT

### I. Applicable Law

A party's ability to amend its complaint is limited by RCFC 15. RCFC 15(a) provides that a party may amend its complaint by leave of court, and that leave shall be freely given when justice so requires. RCFC 15(a). For this reason, "[t]he decision whether to allow leave to amend pleadings . . . is within the sound discretion of the trial court." First Interstate Bank of Billings v. United States, 61 F.3d 876, 881-82 (Fed. Cir. 1995) (citing Te-Moak Bands of W. Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1260-63 (Fed. Cir. 1991)); accord E.W. Bliss Co. v. United States, 77 F.3d 445, 449-50 (Fed. Cir. 1996) (affirming denial of motion to amend complaint); Christofferson v. United States, 77 Fed. Cl. 361, 363 (2007); Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680-81 (1991).

Any one of several factors may justify the denial of a motion for leave to amend. These factors include: (1) undue delay; (2) bad faith; (3) dilatory motive; (4) repeated failure to cure

deficiencies; (5) undue prejudice to opposing party; or (6) futility of proposed amendment. Te-Moak Bands, 948 F.2d at 1260-61 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989); Christofferson, 77 Fed. Cl. at 363. As this Court has stated, "[t]he existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under the circumstances." Spalding & Son, 22 Cl. Ct. at 680 (emphasis added). As discussed below, three of these factors are present in this case, demonstrating that amendment is not necessary to serve the interests of justice in this case, and, in fact, would not serve the interests of justice. For this reason, this Court should deny plaintiffs' motion.

## II. Plaintiffs' Proposed Amendments Would Be Futile

### A. Plaintiffs Have Failed Adequately To Plead The Requirements For Equitable Tolling, And Are Unable To Do So

In their motion, plaintiffs characterize their proposed amended complaint as including allegations supporting equitable tolling. Pl. Mot. 1. Even if equitable tolling were available, plaintiffs have failed to plead the requirements for equitable tolling, namely, a fraudulent misrepresentation by the United States.[2] Plaintiffs are unable to plead fraudulent misrepresentation because they have yet to uncover any evidence that such a misrepresentation took place.

[2] It is the position of the United States that equitable tolling is not available in FLSA cases as the statute already permits the statute of limitations to be extended by one year for wilful violations. See 29 U.S.C. § 255(a).

Equitable tolling is "an exceptional remedy, reserved for extraordinary circumstances, which federal courts have typically extended . . . only sparingly." O'Connell v. Sec'y of HHS, 63 Fed. Cl. 49, 63 (2004) (quotations omitted). There are very few circumstances where plaintiffs in FLSA cases arguably may be entitled to invoke the equitable tolling doctrine, namely where: (1) there was a defective pleading filed during the statutory period; (2) they have been "induced or tricked" by their adversary into allowing the filing deadline to pass; or (3) their damages were "inherently unknowable." Ewer v. United States, 63 Fed. Cl. 396, 401 (2005) (quoting Hickman v. United States, 43 Fed. Cl. 424, 427 n.4 (1999)).

This case presents no circumstance which would permit equitable tolling, and plaintiffs have failed to state any such circumstance in their proposed amended complaint. Plaintiffs allege neither that they filed an earlier defective pleading nor that their damages were "inherently unknowable." They simply allege that (1) the United States "misrepresented" to plaintiffs that they were not entitled to overtime pay, and (2) the United States "promised to pay Plaintiffs in compliance with FLSA for the sixth day of training at the FLETC." Prop. Am. Compl. ¶¶ 20, 23. These two allegations are insufficient to invoke equitable tolling, even if it were available in an FLSA case.

With respect to the first allegation, according to plaintiffs, Government pay personnel conveyed to FLETC trainees that FLETC trainees were not entitled to overtime for the sixth day of training at FLETC. See Prop. Am. Compl. ¶ 20 (alleging "Defendant misrepresented to Plaintiffs that they were not entitled to payment for the sixth day of training under the FLSA"). This was based upon the agency's good faith interpretation of the law. See Declaration of Wayne A. Coleman ¶ 22 (explaining basis of original agency interpretation that overtime not

authorized). In 2003, according to plaintiffs, Government pay personnel explained to employees that they were entitled to overtime pay for the sixth day of training at FLETC. See Prop. Am. Compl. ¶ 2 (alleging that "Defendant informed Plaintiffs in 2003 that they were entitled to overtime pay under the FLSA for the sixth day of training at the FLETC"). This communication was pursuant to a changed interpretation of the law from the Office of Personnel Management. See Coleman Dec. ¶ 5, 7. At this point, presumably, plaintiffs became aware of their rights, and neither the two-year statute of limitations for FLSA claims nor the three-year statute of limitations for "wilful" FLSA claims had run. Plaintiffs cannot now claim that the initial statements of Government personnel "induced or tricked" plaintiffs into delaying their filing. Any misunderstanding by plaintiffs of their rights was corrected in 2003, according to their own allegations.[3] Prop. Am. Compl. ¶ 22. Accordingly, this "misrepresentation" allegation cannot support equitable tolling.

Similarly, the second allegation of a promise to pay cannot support equitable tolling. Because the United States has paid plaintiffs back pay, the substance of their claim is for liquidated damages.[4] To obtain equitable tolling, plaintiffs would have to show that the United States induced or tricked them to delay filing a liquidated damages claim. The United States made no representation to plaintiffs regarding liquidated damages, and accordingly, did not

---

[3] We note that plaintiffs' proposed amended complaint also includes an allegation regarding the alleged failure of the United States to display the requirements of FLSA in the workplace. Prop. Am. Compl. ¶ 26. To the extent that plaintiffs view this as an allegation in support of equitable tolling, it should not be permitted. Any alleged failure to display the requirements of FLSA in the workplace does not meet the "induced or tricked" standard. Ewer, 63 Fed. Cl. at 40.

[4] Counsel for plaintiffs has informed the United States that two plaintiffs claim not to have received their back pay payment.

induce or trick plaintiffs into delaying their filing of a liquidated damages claim. In keeping with these facts, plaintiffs do not allege that the United States ever promised to pay plaintiffs liquidated damages. Without such a promise, plaintiffs cannot show that their delay in filing their liquidated damages claim was the fault of the United States and, further, should be subject to equitable tolling. Therefore, this second allegation of a promise to pay cannot support equitable tolling.

Accordingly, any attempt by plaintiffs to invoke equitable tolling in this case would fail, and an amendment of their complaint to add allegations in support of equitable tolling would be futile. It is therefore not in the interests of justice to permit this amendment.

B. This Court Would Not Have Jurisdiction To Entertain Plaintiffs' Breach Of Contract Claim

Plaintiffs' proposed amendment also would be futile because this Court lacks jurisdiction to entertain their alleged breach of contract claim. Plaintiffs refer to a "contract to compensate them in compliance with the FLSA" in their proposed amended complaint, and allege that the United States' failure to pay liquidated damages constitutes a breach of the United States' "contractual obligations." Prop. Am. Compl. ¶¶ 33, 34. Such a claim is not cognizable in this Court; accordingly plaintiffs should not be permitted to amend their complaint to add this claim.

The jurisdiction of this Court is limited; this Court possesses jurisdiction only over claims where the United States has waived its sovereign immunity from suit. United States v. Testan, 424 U.S. 392, 399 (1972); Booth v. United States, 990 F.2d 617, 619 (Fed. Cir. 1993). The Tucker Act, 28 U.S.C. § 1491, governs the United States' waiver of sovereign immunity from suit in this Court, and states in part, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any

express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). Plaintiffs have not pled, nor can they plead, the existence of an express contract or an implied-in-fact contract "to compensate them in compliance with the FLSA." Prop. Am. Compl. ¶ 33.

"[F]ederal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (citations omitted); accord Schism v. United States, 316 F.3d 1259, 1268, 1274-75 (Fed. Cir. 2002) (en banc) (dicta) (citations omitted). Public employment simply does not give rise to a contractual relationship in the conventional sense. Schism, 316 F.3d at 1275. Accordingly, the employment relationship between the United States and plaintiffs does not give rise to a contractual relationship. Plaintiffs' proposed breach-of-contract claim must therefore be dismissed because their pay is pursuant to statutes, not contracts.

Moreover, plaintiffs have pointed to no express contract embodying the alleged "promise to pay in compliance with the FLSA." Prop. Am. Compl. ¶ 32. Nor have they pled the existence of an implied-in-fact contract, namely: "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance." City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990) (citing Russell Corp. v. United States, 210 Ct.Cl. 596, 609, 537 F.2d 474, 482 (1976)). There is no indication that plaintiffs will be able to show any of these elements based upon the facts as developed thus far. Furthermore, plaintiffs have not alleged actual authority on the part of any Government representative to bind the Government in contract—a requirement of a Government contract claim. City of El Centro, 922 F.2d at 820 (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984)). Based upon the discovery taken thus far, plaintiffs will

be unable to show actual authority on the part of Government pay personnel to bind the Government in contract. Given that plaintiffs cannot show any of the three elements of an implied-in-fact contract, or actual authority, their breach of contract claim will likely fail. Even if they could allege the elements of an express or implied-in-fact contract within this Court's jurisdiction, plaintiffs' relationship with the United States is governed by statute and not by contract. Schism, 316 F.3d at 1275. Therefore, an amendment to add this claim would be futile and should not be permitted.

## III. Plaintiffs' Amendment Would Cause Undue Prejudice To The United States

The proposed amendment also would cause undue prejudice to the United States as it would require additional discovery. In particular, the claims regarding the existence of a contract and the alleged reliance of plaintiffs on certain alleged representations of the United States require discovery that the United States has not yet obtained. The original claims advanced by plaintiffs did not rely on what plaintiffs understood or relied upon. They were based solely upon the good faith and/or wilfulness of the United States in initially failing to pay overtime to FLETC trainees. Plaintiffs' additional proposed claims rely heavily on the state of mind of plaintiffs. To properly defend against these claims would require the United States to obtain additional discovery from plaintiffs. Because discovery has closed in this case, and the parties have set a briefing schedule for motions for summary judgment which begins in a few weeks, the proposed amendment does not permit the United States adequate time to pursue this discovery. This constitutes undue prejudice to the United States. See Holland v. United States, 62 Fed. Cl. 395, 408 (2005). It is particularly prejudicial to the United States because all of the information regarding plaintiffs' state of mind is in the possession of plaintiffs. They will likely

be able to present evidence showing their state of mind without additional discovery, but the United States will be unfairly precluded from doing so. Justice does not require this amendment, and, in fact, militates against it.

IV. Plaintiffs Have Unduly Delayed The Filing Of This Amendment

The injustice of permitting such a late amendment by plaintiffs is highlighted by the fact that plaintiffs have unduly delayed filing this amendment for no apparent reason. Their motion does not enumerate a single reason for their delay in filing. To the contrary, their motion suggests that they intentionally waited to seek amendment as they state that these issues have been raised repeatedly since early on in this litigation. Pl. Mot. 2. Certainly, the question whether plaintiffs' claims are subject to a two-year or a three-year statute of limitations has been present since the beginning of the case. The fact that plaintiffs, in the context of a motion to compel, made a passing reference to equitable tolling, is of little significance. They failed to amend their complaint specifically to assert any additional allegations in support of such a theory until now, several years after beginning this litigation and after the close of discovery. This factor alone demonstrates that justice does not require this amendment. Spalding & Son, 22 Cl. Ct. at 680.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that plaintiffs' request to amend their complaint be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

September 18, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 18th day of September 2007, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah

**APPENDIX**

## INDEX TO APPENDIX

Amended Complaint, Moreno & Porta v. United States (Apr. 11, 2005) . . . . . . . . . . . . . . . . . . A1

Proposed Amended Complaint, Porta, et al. v. United States (Aug. 10, 2007) . . . . . . . . . . . . . A5

Declaration of Wayne A. Coleman, Moreno, et al. v. Bureau of Immigration (D.D.C. Sep. 24, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A10

COPY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**ARTURO MORENO, JR. & THOMAS C. PORTA, individually and on behalf of others similarly situated,**

**Plaintiffs,**

**v.**

**BUREAU OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and THE UNITED STATES OF AMERICA,**

**Defendants.**

**No. 05-142C**

**(Judge Marian Blank Horn)**

## AMENDED COMPLAINT

### INTRODUCTION

1. While employed by the Defendants, the Plaintiffs worked more than 40 hours per week training at the Federal Law Enforcement Training Center. Defendants unlawfully failed to pay them overtime at the rate of time and one half for all the hours over forty.

2. Plaintiffs seek unpaid overtime wages, liquidated damages, costs and attorneys' fees under the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.*

### JURISDICTION

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §1491 as an action against the United States founded upon an Act of Congress, the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, for liquidated damages.

**PARTIES**

**A. Plaintiffs**

4. Plaintiffs MORENO was an employee of defendants. A Consent to Sue for Plaintiff MORENO is attached.

5. Plaintiff MORENO is a resident of El Paso, Texas.

6. Plaintiff PORTA was an employee of defendants. A Consent to Sue for Plaintiff PORTA is attached.

7. Plaintiff PORTA is a resident of Sierra Vista, Arizona.

8. The named Plaintiffs were engaged in commerce while working for defendants.

9. The named Plaintiffs represent additional federal employees who trained at the Federal Law Enforcement Training Center who were not paid time and one half for hours over 40 in a week.

10. The term Plaintiffs as used in this complaint refers to the named Plaintiffs and any additional federal employees who trained at the Federal Law Enforcement Training Center who have not been paid their full overtime earnings and liquidated damages pursuant to the collective action provision of 29 U.S.C. §216(b).

**B. Defendants**

11. Defendant, BUREAU OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, formerly known as UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, is a governmental agency subdivision of the United States of America. The Defendant maintains operations in Washington, D.C.

12. Defendant, THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, is a governmental subdivision of the United States of America. The Defendant maintains operations in Washington, D.C.

13. Upon information and belief, Defendants grossed more than $500,000 in the past fiscal year.

14. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA.

**FACTS**

15. Plaintiffs are or were employed by Defendants.

16. Plaintiff MORENO was employed by the U.S. Department of Justice, Immigration and Naturalization Service and the United States of America from June 2002 through January 2003.

17. Plaintiff PORTA is employed by U.S. Customs and Border Protection of the U.S. Department of Homeland Security and the United States of America.

18. Plaintiffs were required by their employers to participate in training at the Federal Law Enforcement Training Center in Glynco, Georgia.

19. Plaintiffs were required by Defendants to attend training sessions which were regularly scheduled for six days per week, eight hours per day, thus working more than 40 hours per week for Defendants.

20. Defendants paid Plaintiffs a biweekly salary.

21. Defendants failed to pay Plaintiffs overtime compensation at the rate of time and one-half for all hours worked over 40.

22. Defendants' failure to pay Plaintiffs the proper wages required by law was willful.

23. All actions and omissions described in this complaint were made by Defendant directly or through its supervisory employees and agents.

**FIRST CAUSE OF ACTION**
**(FAIR LABOR STANDARDS ACT - OVERTIME)**

24. Defendants failed to pay overtime wages to the Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* and its implementing regulations.

25. Defendants' failure to comply with the FLSA overtime protections caused Plaintiffs to suffer loss of wages and interest thereon.

**WHEREFORE,** Plaintiffs request that this Court enter an order:

A. Granting judgment to Plaintiffs in the amount of their unpaid wages as secured by the Fair Labor Standards Act as well as an equal amount in liquidated damages;

B. Awarding the Plaintiffs' costs and reasonable attorneys' fees; and

C. Granting such further relief as the Court finds just.

Dated: March 22, 2005

Respectfully Submitted,

Michael J.D. Sweeney
Law Office of Dan Getman
9 Paradies Lane
New Paltz, NY 12561
Tel: (845) 255-9370
Fax: (845) 255-8649
ATTORNEY FOR PLAINTIFFS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS C. PORTA, et al.,** | ) | |
| **and** | ) | |
| **ANDREW D. BARTH, et al.,** | ) | **No. 05-14210C & 05-759C** |
| **Plaintiffs,** | ) | **(Judge Firestone)** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | | |

**AMENDED COMPLAINT**

**INTRODUCTION**

1. While employed by the Defendant, the Plaintiffs worked more than 40 hours per week training at the Federal Law Enforcement Training Center. Defendant unlawfully failed to pay them overtime at the rate of time and one half for all the hours over 40.

2. Plaintiffs seek unpaid overtime wages, liquidated damages, costs and attorneys' fees under the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq*.

3. Plaintiffs also seek unpaid overtime wages, liquidated damages, costs and attorneys' fees for breach of contract.

**JURISDICTION**

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §1491 as an action against the United States founded upon an Act of Congress, the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*., ("FLSA") and breach of contract.

**PARTIES**

**A. Plaintiffs**

5. Named Plaintiffs BARTH and PORTA are employees of Defendant.

6. Named Plaintiff BARTH is a resident of Arizona.

7. Named Plaintiff PORTA is a resident of Sierra Vista, Arizona.

8. Named Plaintiffs PORTA and BARTH are engaged in commerce while they work for Defendant.

9. Named Plaintiffs PORTA and BARTH represent additional federal employees who trained at the Federal Law Enforcement Training Center who were not paid time and one half for hours over 40 in a week.

10. The term Plaintiffs as used in this complaint refers to the named Plaintiffs PORTA and BARTH and all Plaintiffs who have opted into this action.

**B. Defendant**

11. Defendant, UNITED STATES OF AMERICA, maintains operations in Washington, D.C.

12. Upon information and belief, Defendant grossed more than $500,000 in the past fiscal year.

13. Defendant operates an enterprise engaged in commerce within the meaning of the FLSA.

**FACTS**

14. Plaintiffs are or were employed by Defendant.

15. Named Plaintiff PORTA and BARTH are employed by the United States of America.

16. Plaintiffs were required by Defendant to participate in training at the Federal Law Enforcement Training Center (hereinafter "FLETC") in Glynco, Georgia.

17. Plaintiffs were required by Defendant to attend training sessions which were regularly scheduled for six days per week, eight hours per day, thus they worked more than 40 hours per week for Defendant.

18. Defendant paid Plaintiffs a biweekly salary.

19. While Plaintiffs participated in training at the FLETC they were not paid for hours worked over 40, specifically they were not paid for the sixth day of training at FLETC.

20. Defendant's failure to pay Plaintiffs the proper wages required by law was willful.

21. Defendant misrepresented to Plaintiffs that they were not entitled to payment for the sixth day of training under the FLSA.

22. Plaintiffs relied on Defendant's misrepresentation.

23. Defendant informed Plaintiffs in 2003 that they were entitled to overtime pay under the FLSA for the sixth day of training at the FLETC.

24. Defendant promised Plaintiffs that it would pay them in compliance with the FLSA for the sixth day of training at the FLETC.

25. Plaintiffs relied on Defendant's promise to fulfill its statutory obligation under the FLSA.

26. Defendant failed to pay Plaintiffs liquidated damages as required under the FLSA, 29 U.S.C. §216(b).

27. During the time that Plaintiffs were employed by Defendant, Defendant did not maintain in the workplace a display containing notices of employee rights to receive minimum wage and overtime, as required under the FLSA.

28. All actions and omissions described in this complaint were made by Defendant directly or through its supervisory employees and agents.

29. All actions and omissions described in this complaint made by Defendant directly or through its supervisory employees and agents were willful.

**FIRST CAUSE OF ACTION**
**(FAIR LABOR STANDARDS ACT - OVERTIME)**

30. Defendant failed to pay overtime wages for the sixth day of training at the FLETC to the Plaintiffs in violation of the FLSA, 29 U.S.C. §201 *et seq*. and its implementing regulations.

31. Defendant's failure to comply with the FLSA overtime protections caused Plaintiffs to suffer loss of wages and interest thereon.

**SECOND CAUSE OF ACTION**

**(BREACH OF CONTRACT - FAILURE TO PAY LIQUIDATED DAMAGES)**

32. Defendant promised to pay Plaintiffs for the sixth day of training at the FLETC in compliance with the FLSA.

33. Plaintiffs relied on Defendant's promise to pay in compliance with the FLSA.

34. Defendant failed to pay Plaintiffs liquidated damages in violation of the contract to compensate them in compliance with the FLSA.

35. Defendant breached its contractual obligations by failing to comply with its promise.

**WHEREFORE**, Plaintiffs request that this Court enter an order:

A. Granting judgment to Plaintiffs in the amount of their unpaid wages as secured by the FLSA as well as an equal amount in liquidated damages;

B. Granting judgment to Plaintiffs in the amount of their unpaid wages as well as liquidated damages for breach of contract;

C. Awarding the Plaintiffs' costs and reasonable attorneys' fees; and

D. Granting such further relief as the Court finds just.

Dated: August __, 2007

Respectfully Submitted,

________________

Michael J.D. Sweeney
Law Office of Dan Getman
9 Paradies Lane
New Paltz, NY 12561
Tel: (845) 255-9370
Fax: (845) 255-8649
ATTORNEY FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTURO MORENO, JR., et. al., Plaintiffs, v. BUREAU OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY, Defendant. | Civil No. 04-0899 (PLF) |

**DECLARATION OF WAYNE COLEMAN**

1. I, Wayne Coleman, declare that I am a Senior Compensation Policy Specialist, employed by the United States Bureau of Immigration and Customs Enforcement (hereinafter ICE), United States Department of Homeland Security.
2. **OPM's Early Policy.** Since the civilian federal workforce was covered by the Fair Labor Standards Act on May 1, 1974, it has been the understanding of the various Federal Agencies that federal employees attending training that provided them with the basic skills and knowledge needed to perform their jobs were not entitled to overtime for any hours that exceeded 40 in a work week. This interpretation is based on the guidance issued by the U.S. Office of Personnel Management (OPM) in Federal Personnel Management (FPM) manual Letter #551-17, dated January 28 1981 (Attached as Exhibit 1). To the best of my knowledge this interpretation was given because the basic training did not meet the requirements outlined in 5 CFR § 551.423(a)(2). It also was consistent with long standing federal policy related to training, codified at 5 CFR § 410.402, which generally prohibits the payment of premium pay to those attending training paid for from appropriated funds.
3. The decision for trainees to attend a regularly scheduled 6th day during basic training at the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia was made by FLETC shortly after the tragic events of September 11, 2001, in order to move trainee

law enforcement employees through basic training more quickly and to enable FLETC to train more law enforcement employees in a shorter period of time. All of the federal agencies with employees in law enforcement related occupations that utilize FLETC for basic training were affected by this decision to go to a six-day training week. Based upon OPM's original guidance, employees who did not meet one of the enumerated exemptions (as set out in 5 C.F.R. §551.423) were not paid for this additional eight hours of training. Employees in entry-level training, such as Plaintiff, did not meet any of the enumerated exemptions.

4. **INS/ICE Efforts to Rectify the Situation.** On April 24, 2002, the Immigration and Naturalization Service (INS) sent a memorandum to the Department of Justice (DOJ was the parent agency for INS at that time) requesting DOJ to go forward to OPM to request an exemption from the prohibition against paying overtime in training found in 5 CFR § 410.402 for those attending training on a regularly scheduled 6th day. On July 18, 2002, the INS notified its management team that DOJ was unwilling to go forward with this request. This prevented INS from paying its employees overtime for attending a 6th day of training. These memoranda are attached as Exhibits 2 and 3.
5. **OPM's Recent Policy Reinterpretation.** In the middle of 2003, OPM provided a new interpretation of an employee's entitlement to FLSA overtime during basic training, specifically with regard to those nonexempt employees attending a regularly scheduled 6th day in a basic training week. Their interpretation was provided on their website in a question and answer format, which is undated, but was issued during the month of June 2003, to the best of my recollection (http://www.opm.gov/oca/pay/HTML/TrainQA.asp) (Exhibit 4). As I understand OPM's new position, the employees are now entitled to overtime pay for certain hours spent in basic training because of the guidance provided at 5 CFR § 551.421, which states that all regularly scheduled hours of duty are hours of work for FLSA purposes and, therefore, compensable. When such regularly scheduled hours, (e.g., a regularly scheduled 6th day of training), exceed the basic 40-hour workweek, nonexempt employees would be entitled to FLSA overtime pay during training under this new interpretation.
6. I conducted a review of the compensation policy memoranda (CPM) issued during 2003 and 2004, which were available on the OPM website. I did not find a CPM being issued

notifying agencies of this change (see http://www.opm.gov/oca/compmemo/index.asp). The CPM is the standard method for notifying federal agencies of an official change in OPM policy.

7. On August 6, 2003, ICE received authority from the Department of Homeland Security to pay FLSA overtime to legacy Immigration and Naturalization Service (INS) employees who were assigned and attended basic training on a regularly scheduled 6th day during a basic training week after January 1, 2002. Beginning with pay period 17-03 (that ran from August 24 through September 6, 2003) nonexempt ICE employees attending basic training were to be paid FLSA overtime in accordance with the new interpretation discussed in the preceding paragraph. Field timekeepers were authorized to begin coding the hours actually spent in training on a regularly scheduled 6th training day during a basic training week on August 24, 2003. A copy of the e-mail notifying management of this decision is attached as Exhibit 5.
8. Beginning on August 24, 2003, ICE compensation policy staff began to collect the names of those employees and former employees who attended training between January 1, 2002 and August 23, 2003, and to identify the number of days the employees attended sessions on a regularly scheduled 6th day of training. In addition, the compensation policy staff began working with the U.S. Department of Justice, Justice Management Division to establish a reimbursable agreement (RA) with our payroll provider [U.S. Department of Agriculture, National Finance Center (NFC), New Orleans, LA]. The compensation policy staff also reached out to the ICE Office of Budget and the ICE Office of Finance to ascertain that funds were available to make the payments for back overtime and to identify the budget account codes that NFC will charge the payments against. A decision was made early in 2004 to pay the affected employees both the amount owed for the overtime hours spent in training, and applicable interest at the standard federal rates. Interest will be paid from the date the employee worked the additional hours until the payment is made. During the week of September 13, 2004 all of these efforts were completed with the establishment of the RA with NFC. This will enable ICE to make the payments to the approximately 3,900 affected employees during pay period 7 or pay period 9 (i.e., late April or early May) of calendar year 2005. The delay in payment is caused by the end of year workload faced by the National Finance

Center (e.g., production of W2 forms) and the large number of back payments NFC has been asked to make.

9. **Total Cost of Back Overtime Payments Owed.** Based on the rough calculations performed by the compensation policy staff, the estimated cost of the back overtime payments including interest for the approximately 3,900 affected employees is over $10,000 dollars.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on 24 September 2004.**

Wayne Coleman
Senior Compensation Policy Specialist
Bureau of Immigration and Customs Enforcement
Department of Homeland Security

**Exhibit 1**

FPM Letter 551-17 **OBSOLETE**

Subject: Time Spent in Training as Hours of Work Under FLSA
FPM Letter 551-17

Subject: Time Spent in Training as Hours of Work Under FLSA

---

Inquiries: Compensation Group, Office of Pay and Benefits Policy, Advisory Services Unit, (202) 632-5582

Code: 551, Pay Administration under the Fair Labor Standards Act Distribution: FPM

Letter Issued: January 28, 1981

---

---

RETAIN UNTIL SUPERSEDED

---

Heads of Departments and Independent Establishments:

This FPM Letter rescinds the guidance contained in FPM Letter 551-3, August 29, 1974, dealing with the prohibition on the payment of overtime pay for a period of training for nonexempt employees under the Fair Labor Standards Act (FLSA).

Section 4109(a)(1) of title 5, United States Code, prohibits premium pay, including overtime pay, for time spent in training. In 1974, OPM determined that this prohibition applied to overtime pay under the FLSA as well. This guidance was promulgated in FPM Letter 551-3.

However, reexamination of this OPM determination in light of (1) a better understanding of the differences between title 5 and the FLSA, and (2) relevant decisions by OPM in resolving conflicts between title 5 and the FLSA since 1974, suggested that the original determination be reversed.

It has been OPM's position, endorsed by GAO, that the two laws are to be administered separately and independently, with nonexempt employees being paid under whichever law provides them the greater overtime pay benefit. Consistent with that position, we have modified our original determination to provide that time spent in training outside regular working hours is compensable as hours of work under the FLSA if certain stipulated criteria are met. These criteria are specified in section 551.423 of the regulations in Part 551 of title 5, Code of Federal Regulations.

The instructions contained in the attachment to this letter provide supplemental guidance for the treatment of time spent in training as hours of work by nonexempt employees under the FLSA.

These instructions are effective prospectively on the effective date of the final regulations for 5 CFR Part 551.

Agencies are cautioned that the regulations contained in 5 CFR 551.423 and the instructions provide in the attachment to this letter do not apply to time spent in training by employees during overtime hours under title 5. The prohibition on the payment of premium pay, including overtime pay, contained in 5 U.S.C. 4109 (a)(1) is applicable in the administration of premium pay under title 5.

Jule M. Sugarman
Deputy Director

Attachment

Attachment to FPM Letter 551-17

TIME SPENT IN TRAINING OR ATTENDING A LECTURE, MEETING, OR CONFERENCE

a. Time Spent in Training

(1) Introduction. In general, a Federal employee is paid for all time spent learning the duties and responsibilities of his or her current position. This includes any time spent by an employee in remedial training or training in revised procedures, products, or processes that is required for the continued performance of the duties of his or her current position.

Therefore, if an employee is directed to participate in such training, the training is primarily for the benefit of the agency, and the time spent in training is hours of work under FLSA. On the other hand, if an employee voluntarily attends a training program to improve his or her performance, or attends a training program to enhance his or her opportunity for reassignment to another position or advancement to a higher grade, such training is primarily for the benefit of the employee. Time spent in this type of training is not hours of work under FLSA.

(2) Exclusion of "Trainees" from Coverage under FLSA

(a) Persons who receive training for their own benefit at Federal activities or in Federal programs are "trainees", and are not employees of the Federal Government for purposes of the FLSA. The definition of "trainee" is contained in 5 CFR 551.102.

(b) The following persons are considered "trainees", and are not subject to OPM's administration of the FLSA:

(i) Persons employed by a State or local government under the Comprehensive Employment and Training Act (CETA) or Work Incentive Program (WIN);

(ii) Persons employed by a college or university under a College Work Study Program;

(iii) Student-employees assigned or attached to a government hospital primarily for training (5 CFR Part 534); and

(iv) Any other person who receives training at a Federal activity or in a Federal program under a similarly constituted program.

(3) Time Spent in Training as Hours of Work

(a) If an agency schedules an employee to attend training during regular working hours, the time spent by the employee in such training is hours of work, unless the employee's attendance is during a period of paid leave or leave without pay.

(b) Training required by the agency for the following purposes meets the criteria specified in 5 CFR 551.423 (a)(2), and the time spent in such training outside regular working hours is hours of work (see Table 1):

(i) Training to meet identified deficiencies in an employee's performance of his or her current position. Such training is designed to bring the employee's performance up to an acceptable level as determined by the agency.

(ii) Training to provide an employee the knowledge or skills to perform new duties or responsibilities required in his or her current position.

This is training in revised procedures, products, or processes so that the employee may perform the duties and responsibilities of his or her current position at an acceptable level.

(c) Training for the following purposes does not meet the criteria in 5 CFR 551.423 (a)(2), and the time spent in such training outside regular working hours is not hours of work under FLSA (see Table 1):

(i) Training to improve an employee's performance in his or her current position above an acceptable level, provided such training is undertaken with the knowledge that the employee's performance or continued retention in his or her current position will not be adversely affected by nonenrollment in the training program. This includes training at an independent school, college, or independent trade school, or training at a Federal activity which corresponds to training offered by an independent institution of learning.

(ii) Training to provide an employee with additional knowledge or skills for reassignment to another position or advancement to a higher grade.

This includes any developmental training or upward mobility training, even if such training is directed by the agency.

Note: Whether time spent in training shall be considered hours of work is a separate and independent determination under FLSA. The fact that an agency has authorized the expenditure of government funds for an employee's attendance at such training under FPM Chapter 410 has no bearing on this determination.

(4) Apprenticeship or Internship Training or Training Under the Veterans Readjustment Act. For employees engaged in an apprenticeship program or other entry level training programs, an internship program or other career related work study programs, or employees appointed under the Veterans Readjustment Act (5 CFR Part 307) time spent in productive work or performance of regular duties is hours of work.

This includes any training scheduled during an employee's regular working hours. However, any related supplemental training or preparatory time for attendance at such training which is performed outside regular working hours is not hours of work, provided no productive work is performed during such periods.

b. Preparatory Time for Training

(1) Allowance for Preparatory Time. An agency may allow employees reasonable time to prepare for their attendance at a training program, if such preparation is closely related to and is indispensable to satisfactory completion of the training program.

If an agency or training facility determines that an allowance for preparatory time is appropriate, it is good practice for employees who are scheduled to attend such training to be advised of the time allowed for preparation before commencement of the training program. They should also be advised that any additional time spent in preparation for the training program is their own time and is not worktime under the FLSA.

(2) Preparatory Time as Hours of Work. Time spent by an employee within an agency's allowance for preparatory time shall be considered hours of work, provided the requirements of 5 CFR 551.423 (c) are met (see Table 1):

(a) If an agency allows an employee preparatory time during regular working hours, such time actually spent by the employee within the allowance of preparatory time is hours of work. However, if an employee takes paid leave or leave without pay to prepare for his or her attendance at a training program, such time is not hours of work under FLSA.

(b) Preparatory time outside the employee's regular working hours is hours of work only when the purpose of the training meets the requirements of 5 CFR 551.423 (a)(2) -- i.e., the employee is directed to participate in the training and the purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position.

Time spent by an employee for this purpose within an agency's allowance of preparatory time is hours of work. An employee may voluntarily spend additional time in preparation for training; however, such additional time in excess of the agency's allowance is not hours of work.

Note: Even though an agency may allow an employee to attend training during regular working hours, this fact alone does not make the preparatory time for attendance at the training program compensable as hours of work under FLSA. The purpose of the training must meet the requirements of 5 CFR 551.423 (a)(2) for preparatory time outside regular working hours to be considered hours of work.

c. Time Spent Attending a Lecture, Meeting, or Conference Time spent attending a lecture, meeting, or conference during regular working hours is hours of work. However, if an

employee's attendance at such an activity is during a period of paid leave or leave without pay, such time is not hours of work under FLSA.

For the time spent in attendance at such an activity outside regular working hours to be considered hours of work, the conditions specified in 5 CFR 551.423 (d)(2) must be met.

TABLE 1 IS TIME SPENT OUTSIDE REGULAR WORKING HOURS IN THE FOLLOWING ACTIVITIES HOURS OF WORK UNDER FLSA?*1

| Type of Training: | Training Time | Prep Time |
| --- | --- | --- |
| Training to bring an employee's performance up to an acceptable level in his or her current position (see paragraph a(3)(b)(i) of this Attachment). | YES | YES*2 |
| Training to provide an employee the knowledge or skills to perform new duties or responsibilities required in his or her current position (see paragraph a(3)(b)(ii) of this Attachment). | YES | YES*2 |
| Training to improve an employee's performance above an acceptable level in his or her current position (see paragraph a(3)(c)(i) of this Attachment).*3 | NO | NO |
| Training to provide an employee additional knowledge or skills for reassignment to another position or advancement to a higher grade (see paragraph a(3)(c)(ii) of this Attachment). | NO | NO |
| Training in an apprenticeship program, an internship program, or training under the Veterans readjustment Act (see paragraph a(4) of this Attachment.*4 | NO | NO |

-----------------------------------------------------------------------------

1. Time spent in training or in preparation for training during regular working hours is hours of work, unless the employee is on paid leave or leave without pay.

2. Time actually spent by an employee within an agency's allowance for preparatory time is hours of work. Any additional time spent by an employee in preparation for training is not hours of work.

3. Such training must be undertaken with the knowledge that the employee's performance or continued retention in his or her current position will not be adversely affected by nonenrollment in the training program.

4. Any period of productive work during such training shall be considered hours of work.

---------------------------------------------------------------------------------------

Attachment to FPM Letter 551-17,
TIME SPENT IN TRAINING OR ATTENDING A LECTURE, MEETING, OR CONFERENCE
Letter Issued: January 28, 1981

(b) Training required by the agency for the following purposes meets the criteria specified in 5 CFR 551.423 (a)(2), and the time spent in such training outside regular working hours is hours of work (see Table 1) [and, therefore, is compensable time]:

(i) Training to meet identified deficiencies in an employee's performance of his or her current position. Such training is designed to bring the employee's performance up to an acceptable level as determined by the agency.

(ii) Training to provide an employee the knowledge or skills to perform new duties or responsibilities required in his or her current position.

This is training in revised procedures, products, or processes so that the employee may perform the duties and responsibilities of his or her current position at an acceptable level.

(c) Training for the following purposes does **not** meet the criteria in 5 CFR 551.423 (a)(2), and the time spent in such training outside regular working hours is **not** hours of work under FLSA (see Table 1) [and, therefore, is not compensable time]:

(i) Training to improve an employee's performance in his or her current position above an acceptable level, provided such training is undertaken with the knowledge that the employee's performance or continued retention in his or her current position will not be adversely affected by nonenrollment in the training program. This includes training at an independent school, college, or independent trade school, or training at a Federal activity which corresponds to training offered by an independent institution of learning.

(ii) Training to provide an employee with additional knowledge or skills for reassignment to another position or advancement to a higher grade.

This includes any developmental training or upward mobility training, even if such training is directed by the agency.

Note: Whether time spent in training shall be considered hours of work is a separate and independent determination under FLSA. The fact that an agency has authorized the expenditure of government funds for an employee's attendance at such training under FPM Chapter 410 has no bearing on this determination.

Exhibit 2

**U.S. Department of Justice**
Immigration and Naturalization Service

HQHRD 100/10.4

Office of the Executive Associate Commissioner

*425 I Street NW*
*Washington, DC 20536*

APR 24 2002

MEMORANDUM FOR ROBERT F. DIEGELMAN
ACTING ASSISTANT ATTORNEY GENERAL
FOR ADMINISTRATION

FROM: George H. Bohlinger, III
Executive Associate Commissioner
Office of Management

SUBJECT: Overtime on the Sixth Day of Training

The purpose of this memorandum is to request you to seek an exception from the U.S. Office of Personnel Management (OPM) to the regulatory prohibition against paying overtime to employees attending basic training at the Immigration Officer Academy (IOA). We are requesting this authority retroactive to January 1, 2002.

In order to accommodate the additional training needs of various agencies in response to the events of September 11th, the Federal Law Enforcement Training Center (FLETC) mandated a 6-day week for all trainees beginning January 1, 2002. This move to a 6-day training week compresses all current class schedules at the IOA. For example, the traditional 18-week Immigration Officer Basic Training Course (IOBTC) will be shortened to 15 weeks. All other courses will be shortened as well.

For the Immigration and Naturalization Service (INS) instructors and trainees at the IOA, the scheduling of training over a 6-day workweek raises the issue of compensation for the overtime hours on the 6th day. Under the regulations governing the payment of overtime, the instructors must be paid overtime for the hours they work on the 6th day. This overtime pay will be in addition to any administratively uncontrollable overtime pay or law enforcement availability pay they may receive.

For those employees attending the training, however, this situation creates tremendous inequities. Under current OPM regulations, employees attending basic training may not be paid overtime unless one of six exceptions listed at 5 C.F.R. 410.402(b) applies, or an exception to the prohibition is granted by OPM.

Under the compressed IOBTC training schedule, trainees (principally Immigration Inspectors) are working 14 8-hour days of overtime to complete the basic Immigration Officer and Spanish training programs. Based on our hiring estimates, we anticipate training approximately 1,320 new employees through the IOBTC. We also anticipate training approximately 480 new Adjudications Officers, who will be required to work 4 8-hour days of overtime to complete the basic course; and approximately 216 Detention Enforcement Officers, who will be required to work 6 8-hour days of overtime. The employees not being paid are GS-5 and GS-7 trainees; the instructors being paid are GS-12 and GS-13 employees.

While the INS can stand behind the prohibition in the regulations to defend not paying the trainees, the resultant inequities will speak louder to our new employees and any future employees than any regulatory defense we might make. Given the number of employees we must hire to meet our hiring goals and the investments we have made in our new employees prior to basic training, we cannot afford the risk of losing new recruits because of the requirement that they put in overtime during training for no compensation.

Current OPM regulations specifically provide that an agency may seek an exception to the prohibition on payment of premium pay where circumstances warrant. The INS requests an exception be sought under this provision because we must make every effort to stay competitive in our bid to attract highly talented candidates who are also being drawn to other Federal agencies with homeland security missions.

We have determined that the majority of components at FLETC are not paying basic trainees overtime in accordance with the prohibition in the regulations. These components include the Bureau of Prisons, Bureau of Alcohol, Tobacco, and Firearms, Internal Revenue Service, Secret Service, Customs Service, and Forest Service. We have been able to confirm that three organizations are paying basic trainees overtime. The agencies are the National Park Service Park Police, the Capitol Police and the U.S. Mint.

Despite the practices of other agencies, we believe it is important to move forward with this request. INS is among the largest users of FLETC and is facing numerous challenges in filling critical border protection positions. In some cases, employees are refusing to attend training, where it is voluntary. In addition, INS has received a grievance related to this issue, to which we must respond. Given the extraordinary and exigent circumstances requiring implementation of the 6th-day of training, and the impact such demands are having on potential applicants for positions INS is mandated to fill, we believe it is critical that this effort move forward expeditiously. The estimated $3.2 million cost of the overtime is available within existing INS resources.

As a result of our concern for equity for the employees and our concern about INS' ability to attract and retain well-qualified individuals to these critical homeland security jobs, we request that you seek an exception from OPM. This exception will authorize INS to pay overtime for those employees attending a 6th day of basic training at the IOA retroactive to January 1, 2002.

**Exhibit 3**

**U.S. Department of Justice**
Immigration and Naturalization Service

HQHRB 100/10

Office of the Executive Associate Commissioner

*425 I Street NW*
*Washington, DC 20536*

JUL 18 2002

MEMORANDUM FOR THE MANAGEMENT TEAM

FROM: George H. Bohlinger, III
Executive Associate Commissioner
Office of Management

SUBJECT: Overtime Compensation for the Sixth Day of Training

We have received a reply from the Department of Justice (DOJ) responding to our request that they seek Office of Personnel Management (OPM) approval for the Immigration and Naturalization Service to pay overtime to those attending basic training at the Federal Law Enforcement Training Center (FLETC). The FLETC adopted a 6-day week for all trainees beginning January, 2002, so that they could accommodate the additional training needs of various agencies in response to the events of September 11, 2001. Under current OPM regulations, Federal employees attending basic training may not be paid overtime unless one of 6 exceptions listed at 5 C.F.R. 410.402 (b) applies, or an exemption is granted by OPM. We requested DOJ to seek an OPM exemption.

The DOJ decided not to seek OPM approval, citing strong opposition by other Department components who felt they would be forced to make additional unanticipated overtime expenditures if INS was granted this authority. Additionally, DOJ considered it to be counterproductive to adopt a policy of offering or denying such entitlements to Department employees in similar circumstances based solely on which component happens to employ them.

We regret that the response to our request on behalf of all our basic trainees was not more favorable. While we do not share DOJ's point of view in this matter, we nevertheless wanted to make you aware of the status of our request.

Questions may be directed to Mr. Phillip Seneschal, Chief, Compensation Policy, Human Resources and Development, at (202) 307-6869.

**Exhibit 4**



# QUESTIONS AND ANSWERS ON TIME SPENT IN TRAINING AS HOURS WORK FOR FLSA-COVERED EMPLOYEES

## Q1: Are employees covered by the Fair Labor Standards Act (FLSA) entitled to recei overtime pay for time spent in entry-level training on the sixth day of a 6-day traini course?

A1: FLSA-covered (nonexempt) employees are entitled to receive overtime pay for time spent in entry-level trai the sixth day of a 6-day training course under the conditions specified below.

Time spent in apprenticeship or other entry-level training **outside regular working hours** is not considere of work, provided no productive work is performed during such periods (see 5 CFR 551.423(a)(3)). However, u 5 CFR 551.423(a)(1), time spent in training **during regular working hours** is considered hours of work. Th regulations at 5 CFR 551.421 clarify that, for purposes of part 551, "regular working hours" means the days and of an employee's regularly scheduled administrative workweek established under 5 CFR part 610. The phrase "regularly scheduled administrative workweek" is defined in 5 CFR 610.102 as the period within an administra workweek within which an employee is regularly scheduled to work. Also, see the definition of "regularly sched work" in 5 CFR 610.102, which hinges on whether the work was scheduled in advance of the administrative wo

When FLSA-covered employees are scheduled in advance of the administrative workweek to attend a 6-day ent training class for a specified number of hours (e.g., 8 hours), those **regularly scheduled training hours** on sixth day are "regular working hours" and are considered hours of work for overtime pay purposes. For exampl FLSA-covered employee who is required to attend a 6-day training session at the Federal Law Enforcement Tra Center (FLETC) is entitled to overtime pay for the sixth day of training, since the employee was scheduled in ac of the administrative workweek to attend the FLETC training course. Because the regularly scheduled training on the sixth day are considered to be "regular working hours" (and the training will not occur outside regular w hours), it is irrelevant that the FLETC training is entry-level training and that no productive work is being perf

Agencies are responsible for determining whether an employee is entitled to receive overtime pay for regularly scheduled training hours under the conditions specified above. Agencies may need to recompute an employee's overtime pay entitlement and provide back pay under 5 CFR part 550, subpart H, for overtime hours that occu during regularly scheduled training.

## Q2: May an employee receive compensatory time off in lieu of overtime pay for atte an extended training session or course?

A2: No. By law, compensatory time off may be approved instead of overtime pay for irregular or occasional (unscheduled) overtime hours of work. See 5 U.S.C. 5543(a). If an employee is scheduled in advance of his or h administrative workweek to attend an extended training course, such training would not be irregular or occasic (unscheduled) overtime hours. Therefore, the employee may not receive compensatory time off instead of over pay for the extended training hours. Please see OPM's fact sheet on compensatory time off for further guidance (http://www.opm.gov/oca/pay/HTML/COMP.HTM).

(Note: Employees on flexible work schedules may earn compensatory time off for regularly scheduled overtime as provided in 5 U.S.C. 6123(a)(1) and 5 CFR 550.114(b) and 551.531(b). However, employees usually are not o flexible work schedules during periods of training.)

MOR 168

A26

Office of Personnel Management
1900 E Street NW, Washington, DC 20415-1000 | (202) 606-1800 | TTY (202) 606-2532

**Site**

**Contact Us | Forms | FAQ's | Products & Services**

**Exhibit 5**

## Coleman, Wayne A

**From:** Ehrbar, John J
**Sent:** Wednesday, February 04, 2004 7:46 AM
**To:** Coleman, Wayne A
**Subject:** FW: Payment for Sixth (6th) Day of Training

-----Original Message-----
**From:** Ehrbar, John J
**Sent:** Wednesday, September 03, 2003 1:29 PM
**To:** Arndt, Jill
**Cc:** Hastings, Rick; Baer, Robert K; Aira, Margie; Smalls, Alethea; Baptiste-Robinson, Eulalia; Higgins, John J; Nogami, Glenda; Waldstreicher, Sid; Lowell, Cynthia; Ellis, Karen M; Park, Steve A; Bergeron, Pauline A; Bartlett, Pamela L; Smith, Kent ; Walker, Glenda F; Hanner, Christine S; Brown, Gwen L; Adams, Denise J; Brown, Phil G; Hunn, Mindy G; Crevonis, Gary E; Tingley, Frederick W; Ehrbar, John J
**Subject:** Payment for Sixth (6th) Day of Training

On August 6, 2003, we received authority from the Department of Homeland Security (DHS) to pay Fair Labor Standards Act (FLSA) overtime to legacy Immigration and Naturalization Service (INS) students who were assigned and attended basic training for a 6th day after January 1, 2002. Effective this pay period (17-03) these employees are to be paid overtime under FLSA provisions. Retroactive payments will be processed, as discussed below.

As other DHS Bureaus have employees affected by this decision, coordination with these organizations was necessary. Through that process, the effective date of the current pay period, 17-03, August 24 through September 6, 2003 was established to start payment of the overtime on a current basis. This message serves as your authorization to do so. The overtime is to be coded into the system as TC 13/17 – FLSA Training, in the applicable week1/week2 fields.

As this is an FLSA overtime payment, the only time that may be credited is for hours actually worked. Time may not be credited for time not worked on the 6th day of basic training for employees who were excused from attending all or any part of the 6th day. The overtime credit is to be limited to hours in attendance. Absences from the scheduled class for all or any significant portion of the training day (an hour or more) may not be included in the overtime payment. For example, if a student attended the morning portion of the 6th day but was excused from the afternoon portion, he or she would only be credited with 4 hours of FLSA hours of work for that workweek.

We understand that a 6th day of basic training per week started on or shortly after January 1, 2002 and included the following occupations:

- Adjudication Officers
- Application Adjudication Officers
- Asylum Officers
- Criminal Investigators
- Deportation Officers
- Detention Enforcement Officers
- Immigration Enforcement Officers, and
- Immigration Inspectors.

Processing retroactive payments will be started as soon as possible. We will need to issue input instructions to employees and timekeepers to ensure uniform procedures are followed so that the payments are correctly computed, recorded and tracked. A specific budget/accounting designation will be established to correctly charge the payment to the proper budget. Current charges will be made to the same accounting code that covers the non-overtime hours of the student as reported on the time card.

Please provide this office with copies of the class rosters of employees eligible for retroactive overtime so

MOR 170
A28

that necessary control procedures may be established. Send them to:

Fred Tingley
Office of Human Resources Management
DHS/ICE
800 K Street NW, Room 5000
Washington, D.C. 20536.

Please ensure that necessary Federal Law Enforcement Training Center officials are informed. The Personnel Officers in the field and headquarters units are receiving copies of this message. Please refer questions to Mr. Fred Tingley at (202) 305-9865.

John J. Ehrbar
Chief, Compensation Policy Section
Office of Human Resources Management
Bureau of Immigration and Customs Enforcement