# EXHIBIT 24

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS C. PORTA, et al.,** **Plaintiffs,** | ) | |
| **v.** | ) | **No. 05-14210C** |
| **THE UNITED STATES,** **Defendant.** | ) | **(Judge Firestone)** |

**PLAINTIFFS OBJECTIONS TO DEFENDANT'S JUNE 15, 2006 NOTICE OF AGENCY ACTION**

The Plaintiffs object to the agency action noticed by the Defendants on June 15, 2006. By discouraging participation in this Fair Labor Standards Act collective action, the Agency's action interferes with the Court's Order that potential class members receive notice of the opportunity to join this Fair Labor Standards Act collective action.

## I. BACKGROUND

During late 2003 and 2004 the Defendant failed to pay 176 Border Patrol Agents for Saturday training at the Federal Law Enforcement Training Center over the course of several months. *See* Exhibit C to Defendant's Opposition to Plaintiff's Motion for Notice (05-Civ-142, Nov. 17, 2005, Docket #22), Declaration of Thomas J. Walters, ¶2. The Government does not contest that the practice violated the FLSA. *See* Defendant's June 15, 2006 Notice of Agency Action (Agency Action Notice) at 2. Moreover, it admits that at least by the summer of 2003 it had knowledge that the practice violated the FLSA. *See* Declaration of Wayne Coleman, Exhibit C to Brief in Support of Motion to Approve Collective Action Notice (05-Civ-142, Nov. 9, 2005, Docket #20). Rather than contest liability, it argues that it acted in good faith in denying payment for the Saturday training in 2004, months after it knew the practice was illegal. *See* Agency

Action Notice at 2.

Plaintiff Porta brought this action as an FLSA collective action on behalf of himself and similarly situated individuals to collect back overtime wages and liquidated damages for the Saturday training. The Court consolidated this case with *Andrew D. Barth, et al. v. United States*, No. 05-759C, on April 19, 2006. *See* April 19, 2006 Order (05-Civ-14210, Docket # 3). In the same Order, the Court ordered the Defendant to send notice of the opportunity to join the case to the class of Border Patrol Agents whom the Defendant had not paid for Saturday training at the FLETC in 2003 and 2004. The Defendant complied with the Court's Order on May 31, 2006, mailing consents to sue to approximately 120 class members who had not joined the Barth or Porta action. *See* Government Notice of Compliance (05-Civ-14210, May 31, 2006, Docket # 13). The notice period began on May 31, 2006 and will end on July 31, 2006. To date, 15 of the approximately 120 have returned executed consents to sue from the Notice.

## II. THE AGENCY ACTION

Sometime shortly after the Notice of the collective action was sent, the Defendant began to make partial payments to potential class members. Agency Action Notice 3-4. Rather than include back pay and liquidated damages in an amount equal to the back pay owed, as mandated by 29 U.S.C. §216(b), the Defendant paid only the back pay plus a 10% premium. Agency Action Notice at 3. Moreover, it made the payment without providing potential class members an accounting of the monies. Agency Action Notice at 4-5. The Defendant made the payments to non-plaintiff class members that it currently employs and apparently intends to make payment to non-plaintiff class members that are former employees. Agency Action Notice at 3. It does not intend to make the payments to current Plaintiffs, however, it takes the position that it can inform

current Plaintiffs that they can recover partial payment if they drop out of the suit. Agency Action Notice at 3 ("if directly requested by a represented plaintiff, that there would [not] be any prohibition against directly providing any requested information to such plaintiff in the normal course of the agency's business.").

The result of the Defendant's partial payments has been to discourage potential class members from joining the suit. Several potential class members contacting Plaintiffs' counsel to question whether they still have a claim. One Plaintiff even called asking to withdraw his consent to sue because he had been told that the money was for the Saturday training hours. It is impossible to tell how many potential class members did not call but simply disregarded the Notice. Moreover, class members are being penalized for having joined the suit. The Defendant admits its liability and will make a payment to class members that have not joined, but it will not pay plaintiffs even while acknowledging it owes the money.

That the Defendant's actions would discourage participation could not have been unintended. First, it timed the payments to coincide with the notice period. The Defendant knew that its practice of not paying for Saturday training was illegal in the Summer of 2003. See Coleman Affidavit. Moreover, Mr. Porta brought his claims in ______ giving the Defendant specific notice that the illegal practice had been applied to Border Patrol Agents. It cannot be a coincidence that despite knowing of the violation for years, the Defendant decided to send out payment during the 2-month notice period.

The Defendant's actions are intentionally misleading. Instead of paying back overtime pay and liquidated damages as required by law, it sent only the back overtime pay with a 10% premium, withholding the additional 90% owed. Agency Action Notice at 3. Moreover, it did not

provide an accounting of the payment, thus depriving potential class members the opportunity to evaluate the payment against the Notice to see that claims remain. Agency Action Notice at 4-5. The Defendant's intention was clearly to try to trick potential class members into believing that they had been paid and the claims raised in the collective action notice were satisfied.

## III. LEGAL ARGUMENT

It is the job of the Court to safeguard the rights of unnamed and unknown prospective plaintiffs in this collective action. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989); *Belt v. Emcare*, 299 F. Supp. 2d 664 (W.D. Tex 2004). As the *Sperling* Court noted, judicial oversight of the notice process helps protect against misleading communications to potential class members. *Sperling*, 493 U.S. at 171. Encouraging potential class members not to participate constitutes a serious challenge to the authority of the Court to maintain control over communications with class members. *See* 3 *Newberg on Class Actions* § 15.19 (3d ed. 1992). "Unsupervised unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from these statements could well be irreparable." *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) *citing Zarate v. Younglove*, 86 F.R.D. 80, 90 (C.D. Cal. 1980). Such conduct warrants restraint.

The Courts have prohibited actions that chill participation in an expected class or collective case. For example, in *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664 (E.D.Tex. 2003), the Court prohibited and sanctioned ex parte communication with members of an FLSA collective action class. In that case, the defendant's counsel drafted a misleading communication to members of the class concerning the merits of joining the case, in a manner designed to chill

Case 1:05-cv-14210-NBF Document 20 Filed 06/19/2006 Page 5 of 7

participation. The letter was sent before the class notice was mailed.

> As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Moreover, a court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Company v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).
>
> * * *
>
> Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir.1985); *Burrell v. Crown Central Petroleum*, 176 F.R.D. 239, 244-45 (E.D.Tex.1997); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D.Tex.1994).

299 F.Supp.2d at 667-8. The Court then found the defendants' communication to absent class members misleading. *Id. at 668.* The *Belt* Court went on to note,

> Finally, the Court finds that EmCare's letter was intended to undermine the purposes of the collective action by encouraging absent class members not to join. . . . [S]ending the letter with no notice to Plaintiff or the Court, the day before EmCare was to provide Plaintiff with the potential class members' mailing addresses for the Court-approved notice, persuades the Court that EmCare intended to subvert the Court's carefully crafted notice and its role in administering the collective action.

299 F.Supp.2d at 669.

In this case, the Defendant's intentional, misleading communication to the expected class discourages participation in the case and subverts the Court's oversight of the notice process. The Parties, with the eventual intercession of the Court, spent a substantial amount of time

negotiating an objective form of Notice. Unfortunately, the Defendant has unilaterally scuttled that process by providing a payment ostensibly for the claims raised in the collective action, but without notice that the payment was not complete. As disturbing, it is attempting to chill participation by denying current plaintiffs payment that it acknowledges is due and is paying to similarly situated employees to not participate in the action. While it is impossible to know the extent of the harm, we do know that it has confused class members and discouraged participation, as the Defendant intended.

**IV. REMEDIES**

The Defendant's behavior must be remedied in full, though this is not easy to accomplish. As individuals cannot be part of an FLSA action without affirmatively opting in, and because it is virtually impossible to tell who's participation has been chilled by the Defendant's behavior, a variety of actions are required:

1. The Defendant should be required to send a notice to all potential class members that any payment that the Defendant has been made or indicated it will make does not fully satisfy the claims raised in the collective action;
2. The Defendant should be required to immediately pay the back wages and interest that it acknowledges are due to all class members, including the current Plaintiffs;
3. The Defendant should be required to submit an affidavit explaining how the improper activity came about and what steps it is taking to ensure no similar activity takes place;
4. The Court should order the Defendant not to engage in any other activity that will have the effect of chilling participation in the collective action;
5. The Court should reserve the opportunity for individuals to join the case post-judgment;

6. Award plaintiffs' costs and attorneys' fees for the time spent on this motion.

The Defendant's improper actions are intended to discourage participation and thwart the Court's supervision of the notice process in this collective action. The Defendant should not be permitted to benefit from decreased participation in the case through unlawful means.

Respectfully submitted

Dated: June 19, 2006

/s

Michael J.D. Sweeney
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370
Fax (845) 255-8649
Msweeney@getmanlaw.com