**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS C. PORTA, et al.,** <br> **and** <br> **ANDREW D. BARTH, et al.,** <br> **Plaintiffs,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant.** | ) | **No. 05-1420C & No. 05-759C** <br> **CONSOLIDATED** <br> **(Judge Firestone)** |

**PLAINTIFFS' PROPOSED**
**FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims, Plaintiffs respectfully submits the following proposed findings of uncontroverted fact in support of their Motion for Summary Judgment On The Issues of Liability and Damages.

**A. Plaintiffs Were Required to Train for Six Days a Week**

1. From January 2002 through May 2004, the Government required thousands of employees to train for six days a week at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. Defendant's Proposed Findings of Uncontroverted Fact ("DSOF")[1] ¶79, PX[2] 1; Coleman Oct. 14, 2004 Decl. ¶3, PX 2.

---

[1] DSOF ¶__ refers to the paragraph associated with "Defendant's Proposed Findings of Uncontroverted Fact" submitted by the Government in support of their Cross Motion for Summary Judgment in *Moreno v. U.S.*, 05-142C, Docket No. 121 (Fed. Cl., Dec. 21, 2007) (Judge Firestone), attached as Plaintiffs Exhibit 1.
[2] PX __ refers to Plaintiffs' exhibit number.

2. Plaintiffs are a group of current and former U.S. Government employees who trained at the FLETC. Answer ¶¶1, 61-65, Docket No. 14-1,[3] PX 3; Defendant's 30(b)(6) Deposition of Wayne Coleman Deposition ("Coleman Depo."), 9:8-14, PX 5; Session Roster, U.S. Border Patrol Academy ("Session Roster"), PX 6.
3. Plaintiffs were members of four classes of Border Patrol agents required to perform entry-level training at the FLETC between July 17, 2003 and May 21, 2004. Answer ¶65, Docket No. 14-1, PX 3; Session Roster, PX 6.
4. During the classes, the Government required Plaintiffs to train six eight-hour days a week for the duration of their training. Answer ¶66, Docket No. 14-1, PX 3; DSOF ¶6, PX 1.
5. The sixth day of training was a scheduled part of the training program. Answer ¶66, Docket No. 14-1, PX 3; DSOF ¶¶1-4, PX 1.
6. This sixth eight-hour day resulted in Plaintiffs working more than 40 hours in a workweek. Answer ¶66, Docket No. 14-1, PX 3.
7. The Chief of Border Patrol made the decision to send Plaintiffs to the six-day-a-week training at the FLETC. Coleman Depo., 127:7-19, 144:2-9, PX 5.
8. Assistant Chiefs of Border Patrol were aware that the Plaintiffs were training at the FLETC six days a week, as was management of the Border Patrol Academy in South Carolina and the Director himself. Coleman Depo., 144:10-145:10, PX 5.
9. The Chief Patrol Agent oversaw the training schedule for Plaintiffs. Response No. 1, Defendant's Response to Plaintiffs' First Set of Interrogatories, page 7, PX 7.

---

[3] Unless otherwise indicated, Docket No. refers to the Court Docket in *Porta et al., v. Barth et al., v. U.S.*, 05-14210, available through PACER. Defendant's Answer incorporates Plaintiffs allegations made in the Amended Complaint. Plaintiffs Amended Complaint is attached for the Court's convenience as PX 4.

10. Government employees from the Border Patrol Academy and the FLETC coordinated Plaintiffs' training at the FLETC. Coleman Depo., 41:17-24. 108:24-109:3, PX 5.

11. While training at the FLECT Plaintiffs were required to submit weekly time sheets to their managers. Coleman Depo., 34-35, PX 5.

**B. The FLSA Requires Overtime Pay for Plaintiffs' Sixth Day of Training**

12. The Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), required the Government to pay Plaintiffs overtime for the sixth day of training at the FLETC. Answer, ¶¶ 1,78, Docket No. 14-1, PX 3; Questions and Answers on Time Spent In Trainings As Hours of Work for FLSA Covered Employees, Office of Personnel Management website ("OPM Q&A Website"), PX 8.

13. Defendant admits that the FLSA required it to pay Plaintiffs overtime wages for the sixth eight-hour day of training. DSOF ¶¶51, 54-57, PX 1; OPM Q&A Website, PX 7; Coleman Depo., 9:23-10:9, 96-97; 101:18-102:15, PX 5; David Hyde's e-mail correspondence with various government personnel dated March 20, 2003 and March 19, 2003 ("Hyde e-mail"), PX 9.

14. Government's own regulations require FLSA overtime wages for regularly scheduled hours during entry level training. See OPM Q&A Website, PX 8 (explaining that 5 C.F.R. §551.423(a) requires FLSA overtime wages for training during regular working hours, and that 29 C.F.R. §551.421 defines regular working hours to include regularly scheduled overtime.)

## C. At the Time Plaintiffs Trained, the Government Knew that the FLSA Required It to Pay Plaintiffs Overtime Wages for the Sixth Day of Training

15. The Government knew in July 2003 that it was obligated to pay Plaintiffs overtime wages for the sixth day of regularly scheduled training at the FLETC. OPM Q&A Website, PX 8.

16. In July 2003, the Office of Personnel Management ("OPM") posted notice, a "Q&A", on its website explaining that the law required the Government to pay overtime for regularly scheduled overtime during training at the FLETC. OPM Q&A Website, PX 8; DSOF ¶57, PX 1.

17. OPM's guidance was authoritative as it is the Government entity charged with promulgating regulations governing the Government's FLSA obligations. DSOF ¶8, PX 1.

18. OPM's July 2003 Q&A website was the culmination of a long process of notifying Government agencies of their obligation to pay overtime for the sixth day of training at the FLETC. DSOF ¶¶37-45, 51-57, PX 1.

19. The Government is in the unique position of being responsible for promulgating the regulations governing its own FLSA obligations. 29 U.S.C. §204(f); *see* 5 C.F.R. Part 551; Defendant's 30(b)(6) deposition of Jerome Mikowicz dated January 11, 2007 ("Mikowicz Depo."), in *Moreno v. U.S.*, 05-142, at 20:11-14, PX 10.

20. Pursuant to this authority, the Government promulgated 5 C.F.R. §551.423. 45 F.R. 49582 (July 25, 1980).

21. That regulation provides that "Time spent in training during regular working hours shall be considered hours of work." 5 C.F.R. 551.423(a)(1).

22. Two sections away, on the same page of the published volume C.F.R., section 551.421 defines "regular working hours" to include regularly scheduled overtime. 45 F.R. 85664 (Dec. 30, 1980); 5 C.F.R. §551.421, PX 11.

23. The promulgation process for these regulations involved an extensive comment period. Dwight Brown comments on responses to regulations proposed in 45 Fed. Reg. 49580, ("Brown comments"), PX 12.

24. Defendant's notes from that process show that Defendant received extensive comments requesting that it define the term "regular working hours" to avoid ambiguity. Mikowicz Depo., 219:24-220:12, Ex. 10; Brown comments, PX 12, at Bates No. MOR-3693 (dated July 13, 1978)(letter from D.E.Lemon, Director of Personnel Management from the U.S. Department of Labor stating that "[w]e strongly urge than an attempt be made to redefine the 'workday' of this regulation so that it does relate directly both to the 'workday' of Part 610 and to 'an employee's regular working hours' as used elsewhere in the draft."), at Bates No. MOR-3694 (dated July 26, 1978)(memorandum from John J. Laffery, Director New York Region U.S. Civil Service Commission stating that "[t]he term 'regular working hours,' as it is used in Section 551.421, 551.422, 551.423, 551.425, is not defined. A clear definition is necessary because the regulations covering time spent in ...training... appear to be inapplicable to intermittent employees, who have no 'regular working hours,'[.]")

25. The Government "interpreted the term 'regular working hours' to include regularly scheduled overtime as far back as 1976." Bryce Baker e-mail to Jo Ann Perrini, Vicki Draper, Don Winstead dated March 24, 2003, regarding "Regular working hours

(March 24, 2003)("I have found in the old FLSA history files that OPM (Dwight Brown) interpreted the term 'regular working hours' to include regularly scheduled overtime pay as far back as 1976."), PX 13.

26. In November 2002, OPM began informing agencies that the FLSA required overtime wages for the sixth day of training at the FLETC. DSOF, ¶¶40-42, PX 1; Bryce Baker e-mail exchange with Vicky Draper dated November 18, 2002, PX 14.

27. The six day training schedule was a new event at the FLETC. DSOF ¶¶5-6, PX 1.

28. OPM's guidance was in response to repeated inquiries by Government employees about whether overtime pay was required for the sixth day of training at FLETC. DSOF ¶55; PX 1; DHS Broadcast e-mail dated May 6, 2003, PX 15; Bryce Baker e-mail exchange with Vicky Draper dated November 18, 2002, PX 14.

29. In a series of e-mails to various Government entities beginning in November 2002, OPM explained in detail that 5 C.F.R. §551.423 required FLSA overtime to be paid for regular working hours, and that §551.421 defined regular working hours to include regularly scheduled overtime, like the sixth day of training at FLETC. DSOF ¶¶40-45, 51-52, PX 1; Wayne Coleman e-mail correspondence dated February 13, 2003 ("Coleman e-mail"), PX 16.

30. The National Park Service Park Police (a unit of the Department of the Interior and National Park Service), the Capitol Police, and the U.S. Mint (part of the Department of Treasury) all paid their agents training at the FLETC overtime for the sixth day of training at the time of the training. George H. Bohlinger, III, Executive Associate Commissioner, Office of Management , U.S. Department of Justice, memorandum to

Robert F. Diegelman, Acting Assistant Attorney General For Administration dated April 24, 2002 ("Bohlinger memorandum") PX. 17.

31. The Forest Service received written notice of OPM's position that the FLSA requires overtime pay for the sixth day of training in December 2002; the Immigration and Naturalization Service ("INS") and the Department of Justice ("DOJ") received written notice of the position in February 2003 . DSOF ¶¶40-42, PX 1; Coleman e-mail, PX 16.

32. The newly-formed Department of Homeland Security ("DHS") received written notice of OPM's position that the FLSA requires overtime pay for the sixth day of training in March 2003 and promptly forwarded the information to the heads of its various components, including Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE"). DSOF ¶¶43-45, 51-52, PX 1; Hyde e-mail, PX 9.

33. In March 2003, OPM intended to post a Q&A on its website explaining the obligation to pay FLSA overtime for the sixth day of training at the FLETC. Hyde e-mail, March 19, 2003 e-mail from Steve Cohen to Melissa Allen, PX 9.

34. At the urging of DHS, OPM delayed the posting. Mikowicz Depo., 193:11-195:16, PX 10; DSOF ¶¶51-54, PX 1; Donald Winstead e-mail stream to Doris L. Hausser dated June 24, 2003, PX 18.

35. In July 2003, OPM posted the Q&A on its website explaining that the FLSA required overtime pay for the sixth day of regularly scheduled training at the FLETC. OPM Q&A Website, PX 8; DSOF ¶57, PX 1.

### 1. CBP Knew the Government Was Obligated to Pay FLSA Overtime

36. Border Patrol is one of three entities that make up CBP. U.S Customs and Border Protection website <http://www.cbp.gov> (last accessed February 7, 2008), PX 19; Coleman Depo., 104:3-15, PX 5.

37. CBP is itself a component of DHS. DSOF ¶¶47-48, PX 1.

38. DHS was created on November 25, 2002. DSOF ¶46, PX 1.

39. CBP came under the auspices of DHS in March 2003. DSOF ¶¶47-48, PX 1; Coleman Depo. 20:10-18, 22:4-13, PX 5.

40. Prior to being part of the DHS the CBP was called U.S. Customs Service and was a bureau in the Department of Treasury. DSOF ¶48, PX 1; Coleman Depo., 19:11-21, PX 5.

41. The INS became part of DHS in March 2003. Coleman Depo., 15:8-22, PX 5.

42. In March 2003, the INS functions were absorbed into Immigration and Customs Enforcement ('ICE"), CBP, and Custom and Immigration Services ("CIS"). Coleman Depo., 15:8-22, PX 5; DSOF ¶48, PX 1.

43. All these entities are part of DHS. Coleman Depo., 15:8-22, 22-23, 95:20-22, PX 5; DSOF ¶48, PX 1.

44. In March 2003, CBP's compensation staff handled compensation issues for Border Patrol. Coleman Depo., 104:16-21, PX 5.

45. Ronelle Rotterman was the person at CBP handling compensation issues. Coleman Depo., 21:5-8, PX 5.

46. If Ms. Rotterman needed guidance on compensation issues, she could look to Melissa Allen, the Acting Chief, Human Capital Officer at DHS, or she could contact OPM directly for guidance. Coleman Depo., 20:25-22:18; 96:10-97:20, PX 5.

47. Ms. Rotterman knew that the FLSA required overtime pay for the sixth training at the FLETC. Coleman Depo., 93:14-18, PX 5.

48. By March 2003, CBP knew OPM's position. Coleman Depo., 99:20-100:13, PX 5.

49. Robert M. Smith, Ms. Rotterman's direct report and the Director of Human Resources for the U.S. Customs Service, had received written notification of OPM's position and a copy of the Q&A that was eventually posted on OPM's website in July 2003. Coleman Depo., 94:22-98:13, PX 5; Hyde e-mail, PX 9.

50. Mr. Smith's supervisor, Deborah Spero, the Deputy Commissioner for Customs received the same information. Hyde e-mail, PX 9; Coleman Depo., 95:13-100:13, PX 5.

51. Ms. Allen and OPM, were both aware of OPM's position in March 2003. March 19, 2003 e-mail from Melissa Allen to various people, including Bob Smith and Deborah Spero, PX 9.

52. By July 2003, Ms. Rotterman at CBP knew that OPM had posted its Q&A stating that the FLSA required overtime pay for the sixth day of training at the FLETC. Coleman Depo., 126:7-15, PX 5.

53. By July 2003, DHS knew that that OPM had posted its Q&A stating that the FLSA required overtime pay for the sixth day of training at the FLETC, as did INS, DOJ, FLETC, US Customs Service, CIS, and ICE. OPM Q&A Website, PX 8; Coleman

Depo., 98, 107:6-15, 108:7-11, PX 5; DSOF ¶43, PX 1; Hyde e-mail, PX 9; Coleman e-mail, PX 16.

**C. The Government Did Not Pay the Plaintiffs for the Sixth Day of Training**

54. Despite its knowledge that the FLSA required overtime pay, Defendant did not pay Plaintiffs overtime wages for the sixth day of training at the FLETC. Answer, ¶¶73-76, Docket No. 14-1, PX 3.

55. When Thomas Porta brought suit in April 2005, the Government continued to withhold Plaintiffs overtime pay. Coleman Depo., 59:15-61:2, PX 5.

56. When Andrew Barth filed suit on July 18, 2005, the Government continued withholding Plaintiffs overtime pay. Coleman Depo., 59:15-61:2, PX 5.

57. Even after 53 Plaintiffs joined the Porta and Barth suits, the Government refused to pay overtime. Coleman Depo., 59:15-61:2, PX 5.

58. On April 24, 2006, the Court ordered the Government to issue notice of the opportunity to join this action to the class. Order, Docket No. 3, PX 20.

59. The Government sent a Court-approved approved notice to the class by May 30, 2006. Defendant's Notice of Compliance, Docket No. 13, PX 21.

60. Sometime in early June 2006, the Government began to make partial payments to some class members without the Court or Plaintiffs' knowledge or consent. Defendant's Notice of Agency Action, at page 1, Docket No. 18, PX 22.

61. The Government intended to make the partial payments to class members who had not yet joined the action, even though the 60-day opt-in period had just begun. Defendant's Notice of Agency Action, at page 1, Docket No. 18, PX 22.

62. The Government's partial payment was designed to chill participation in this action by offering partial payment and discriminating against Plaintiffs. June 20, 2006 Order (05-14210, Docket No. 22), PX 23; Plaintiffs' June 19, 2006 Objections to Agency Action (05-14210 Docket No. 20), PX 24.

63. The timing of the partial payment caused confusion among the class as to whether they were still eligible to join this action to recover payment. See Plaintiffs' Objections to Defendant's June 15, 2006 Notice of Agency Action at page 3, Docket No. 20, PX 24.

64. On class members' pay statements, the Government listed the payment it made as "liq.damages/int.backpay". Thomas Porta Statement of Earnings and Leave and Maame A.F Ewusi-Mensah's letter to Michael J.D Sweeney dated July 18, 2007, PX 25.

65. The payment was not accompanied by an accounting that would allow class members to understand how the payment was calculated. Plaintiffs' Objections to Defendant's June 15, 2006 Notice of Agency Action at pages 3-4, Docket No. 20, PX 24; Defendant's Notice of Agency Action, at pages 4-5, Docket No. 18-1, PX 22.

66. Upon learning of the Government's actions, the Court ordered the Government to send a remedial notice to class members explaining that they had rights remaining to be redeemed even if they had received the Government's partial payment June 20, 2006 Order (05-14210, Docket No. 22), PX 23.

67. The Court ordered the Government to mail the remedial notices to the class plaintiffs by July 12, 2006, and extended the opt-in period until September 10, 2006. June 20, 2006 Order (05-14210, Docket No. 22), PX 23.

68. The Court also ordered the Government to pay Plaintiffs the same partial payment it made to non-plaintiff class members. June 20, 2006 Order (05-14210, Docket No. 22), PX 23.

69. On June 20, 2006, the Court Ordered that "[t]o the extent OPM had the authority to continue to pay back pay to individual Border Patrol Agents who attended training at FLETC for six days a week, eight hours a day for several weeks, but were not paid for the sixth day, the named plaintiffs will also be entitled to such payments." Order, at ¶1, Docket No. 22, PX 23.

70. Plaintiffs William Griffith and John Joseph Turko have not been paid even the partial payment. Declaration of William Griffith ("Griffith Decl."), ¶7; Declaration of Joseph Turko ("Turko Decl."), ¶6.

71. The Government is aware of its failure to pay Griffith and Turko, but has made no effort to remedy its violation of the Court's Order. See Sweeney Declaration ¶29.

**D. Plaintiffs Claims Are Timely**

72. Plaintiffs filed their consents to sue within the FLSA's statute of limitations. *See* Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26.[4]

73. All the Plaintiffs in the original Barth action filed their consents to sue within two years of training at the FLETC, as did Thomas Porta. Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26.

74. With three exceptions, Plaintiffs Griffith, Turko and Barron, the remainder of the Plaintiffs filed their consents to sue in response to the Court-ordered notice in this

[4] PX 26 is a chart of the dates that each Plaintiff filed his or her consent to sue with the Court as derived from the docket in this case. The training start and ends dates are from PX 27. See FN5, supra.

matter within three years of training at the FLETC. Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26.

75. Plaintiff Griffith never received the Court-ordered notice of this action. Griffith Decl., ¶11.

76. Plaintiff Griffith was due notice because he trained at the FLETC for six days a week from February 5, 2004 through May 21, 2004. Griffith Decl., ¶3.

77. Plaintiff Griffith did not receive notice even though his current address is the same as his address when he trained at the FLETC. Griffith Decl., ¶¶16-17.

78. Mr. Griffith is currently a U.S. Government employee. Griffith Decl., ¶1.

79. The Government has had Mr. Griffith's social security number since he began working with it. Griffith Decl., ¶15.

80. Until Mr. Griffith heard about this suit, he relied on the Government's representation that he was not due overtime for the sixth day of training. Griffith Decl., ¶¶9-10.

81. Plaintiff Griffith filed a consent to sue on July 20, 2007, promptly after becoming aware of this case. Griffith Decl., ¶12-13; Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26.

82. Plaintiff Joseph Turko did not receive notice of this action. Turko Decl., ¶11.

83. Plaintiff Turko was due notice because he trained at the FLETC for six days a week from February 5, 2004 through May 21, 2004. Turko Decl., ¶2.

84. Based on the Government's practices, Mr. Turko believed that he was not due overtime under the law and did not file suit. Turko Decl., ¶¶8-10.

85. The Government had Plaintiff Turko's social number since he began working with it. Turko Decl., ¶14.

86. Plaintiff Turko filed a consent to sue in this action on April 25, 2007, promptly after becoming aware of it. Turko Decl., ¶¶12-13.

87. Part of Plaintiff Turko's claims are within three years of when he filed his consent to sue. Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26.

88. Neither Plaintiff Turko nor Griffith ever received any payment for their sixth day of training at the FLETC. Griffith Decl., ¶7., Turko Decl., ¶6.

89. Plaintiff Patricia Barron filed her consent to sue on August 11, 2006, shortly after the Government sent the Court-ordered remedial notice. Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26.

90. Plaintiff Barron had trained at the FLETC from July 17, 2003 through August 29, 2003. See, Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26; Government Spreadsheet, PX 27.[5]

91. Three of the seven weeks Plaintiff Barron trained were within three years of when she filed her consent to sue. Chart of Plaintiffs opt-in dates and training dates at the FLETC, PX 26; Government Spreadsheet, PX 27.

Dated: February 8, 2008

Respectfully submitted,

/s/ Michael J.D. Sweeney

Michael J. D. Sweeney, Esq.
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561

[5] PX 27 is a spreadsheet provided by the Government. The spreadsheet has been redacted to exclude settlement information and personal information not relevant to this motion. All the data and text is as provided by the Government with two exceptions: (1) the number of Saturdays Plaintiff Barron worked were recalculated based her dates of training; and (2) the Plaintiffs calculated the total of back wages owed.

Tel: (845) 255-9370
Fax: (845) 255-8649