**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THOMAS C. PORTA, et al.,** | ) | |
| **and** | ) | |
| **ANDREW D. BARTH, et al.,** | ) | **No. 05-1420C & No. 05-759C** |
| **Plaintiffs,** | ) | **CONSOLIDATED** |
| | ) | **(Judge Firestone)** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF LIABILITY AND DAMAGES

---

Getman Law Office
Michael J.D. Sweeney
9 Paradies Lane
New Paltz, New York 12561

Gattey Baranic LLP
Michael P. Baranic
2445 Fifth Avenue, Suite 350
San Diego, CA 92101

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

QUESTIONS INVOLVED ..... vi

INTRODUCTION ..... 1

FACTS ..... 1

A. Plaintiffs Were Required to Train for Six Days a Week ..... 1

B. The FLSA Requires Overtime Pay for Plaintiffs' Sixth Day of Training ..... 2

C. At the Time Plaintiffs Trained, the Government Knew that the FLSA Required It to Pay Plaintiffs Overtime Wages for the 6th Day of Training ..... 3

1. CBP Knew the Government Was Obligated to Pay FLSA Overtime ..... 6

D. The Government Did Not Pay the Plaintiffs for the Sixth Day of Training ..... 7

E. Plaintiffs Claims Are Timely ..... 9

PROCEDURAL HISTORY ..... 10

ARGUMENT ..... 11

A. Summary Judgment Principles ..... 11

B. FLSA Principles ..... 12

C. Defendant Is Liable for Its FLSA Violations ..... 12

a. The Government Is Liable for Liquidated Damages ..... 14

D. A Three Year Statute of Limitations Should Apply ..... 18

E. Plaintiff Claims for Liquidated Damages Are Timely ..... 21

F. Plaintiffs Should Be Awarded $263,478.72 in Liquidated Damages and $5,680.80 in Unpaid Back Wages ..... 24

CONCLUSION ..... 26

## TABLE OF AUTHORITIES


**Case Citations** **Page**

*Adams v. U.S.*, 46 Fed. Cl. 616 (2000) .......... 15, 20

*Advanced Materials v. Perry,* 108 F.3d 307 (Fed.Cir.1997) .......... 22

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) .......... 11

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) .......... 15

*American Electronic Laboratories, Inc. v. U.S.,* 774 F.2d 1110 (Fed.Cir.1985) .......... 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 11

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) .......... 13

*Angelo v. U.S.*, 57 Fed. Cl. 100 (2003) .......... 20

*Avitia v. Metropolitan Club*, 49 F.3d 1219 (7th Cir. 1995) .......... 15

*Barrentine v. Arkansas-Best Freight System, Inc*, 450 U.S. 728 (1981). .......... 11

*Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir. 1998) .......... 16

*Brock v. Wilamowsky,* 833 F.2d 11 (2nd Cir. 1987) .......... 16

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) .......... 15

*Bull v. U.S.*, 68 Fed. Cl. 212 (2005) .......... 14, 15, 16, 17, 18, 20

*Celotex v. Catrett*, 477 U.S. 317 (1986) .......... 11

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943 (2nd Cir. 1959) .......... 15, 16, 17

*Corrigan v. U.S.*, 68 Fed. Cl. 589 (2005) .......... 20

*Cunningham v. Gibson Elec. Co., Inc.*, 43 F.Supp.2d 965 (N.D.Ill. 1999) .......... 13

*D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108 (1946) .......... 14, 15

*De Asenci v. Tyson Foods, Inc.*, 342 F.3d 301 (3rd Cir. 2003) .......... 23, 24

*Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962 (6th Cir. 1991) .......... 19

*Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860 (S.D.N.Y. 1984).........16

*Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832 (6th Cir. 2002) ..........................15

*Faison v. Texas EZPawn, L.P.*, 2007 WL 1481047 (S.D.Tex. 2007) ..............................23

*Fletcher v. Grinnell Bros.*, 64 F.Supp. 778 (D. Mich. 1946) ..........................................15

*Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981)..........................14

*Giles v. City of New York*, 41 F.Supp.2d 308 (S.D.N.Y. 1999).......................................12

*Heckler v. Cmty. Health Servs.*, 467 U.S. 51 (1984) .......................................................21

*Herman v. RSR Sec. Services Ltd.* 172 F.3d 132 (2nd Cir 1999)................................16, 18

*Hohnke v. United States*, 69 Fed. Cl. 170 (2005) ..........................................................14

*John v. U.S.*, 77 Fed. Cl. 788 (2007) ..............................................................................21

*Kaeper Machine, Inc. v. U.S.*, 74 Fed. Cl. 1 (2006) .......................................................21

*Laffey v. Nothwest Airlines, Inc.*, 567 F.2d 429 (D.C. Cir. 1976) ............................. 16, 17

*Lee v. ABC Carpet and Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ..................................23

*Martin v. Cooper Elec. Supply*, 940 F.2d. 896 (3rd Cir. 1991) ........................................15

*Martin v. Indiana Michigan Power Co.*, 292 F.Supp.2d 947 (W.D.Mich. 2002) ............15

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3rd Cir. 1991)............................................19

*McConnell v. Applied Performance Technologies, Inc.*,

2002 WL 483540 (S.D.Ohio 2002) ..................................................................................14

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ..........................................18, 20

*Partlow v. Jewish Orphans' Home of Southern California, Inc.*,

645 F.2d 757 (9th Cir. 1981) ...........................................................................................23

*Powell v. U.S. Cartridge Co.*, 339 U.S. 497 (1950) .......................................................11

*Reich v. Department of Conservation & Natural Resources*,

28 F.3d 1076 (11th Cir.1994) .......... 13, 14

*Reich v. Monfort Inc.*, 144 F.3d 1329 (10th Cir. 1998) .......... 19

*Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58 (2nd Cir. 1997) .......... 15, 16

*Reich v. Stewart*, 121 F.3d 400 (8th Cir. 1997) .......... 14

*Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2nd Cir. 1995) .......... 19

*Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.*,

321 U.S. 590 (1944) .......... 12

*U.S. v. Rosenwasser*, 323 U.S. 360 (1945) .......... 11

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986) .......... 16

**Statutes**

29 U.S.C. §201 .......... 2

29 U.S.C. §203(d) .......... 12

29 U.S.C. §203(g) .......... 13

29 U.S.C. §203(x) .......... 12

29 U.S.C. §204(f) .......... 3

29 U.S.C. §206 .......... 15

29 U.S.C. §207 .......... 11, 12, 13, 14, 15, 25

29 U.S.C. §216(b) .......... 13, 15, 18, 24, 25

29 U.S.C. §255 .......... 18

29 U.S.C. §260 .......... 16, 17

5 U.S.C. §5504(b)(1) .......... 25

**Rules and Regulations**

5 C.F.R §551.104 .......... 13, 18

5 C.F.R. §551.402(a) .......... 13

29 C.F.R. §551.421 .......... 2, 3, 4, 5

5 C.F.R. §551.423 .......... 2, 3, 4

29 C.F.R. §785.13(2005) .......... 13, 14

29 C.F.R. §790.22(b) (2005) .......... 18

Fed. R. Civ. P. 56 .......... 11

**Other Authorities**

45 F.R. 85664 (Dec. 30, 1980) .......... 3

## QUESTIONS INVOLVED

1. Is the Government's admission that its failure to pay Plaintiffs overtime for a sixth day of training violated the Fair Labor Standards Act ("FLSA") correct?

2. Can the Government's failure to pay overtime wages it knew the FLSA required be the basis for an exception to the FLSA's mandatory liquidated damage rule?

3. Does the Government's knowing violation of its FLSA obligations support a three-year statute of limitations under 29 U.S.C. §255?

4. Was the Government's failure to pay some Plaintiffs the same payment it made to non-plaintiff class members a violation of the Court's June 20, 2006 Order?

5. Does the Government's intentional interference with Court-ordered class notice support the Court's exercise of its equitable powers to hear claims put in jeopardy by the Government's misconduct?

6. Does the Government's failure to provide the Court-ordered notice to class members support the Court's exercise of its equitable powers to hear claims of class members who joined the action promptly upon receiving notice?

7. Can the Court determine the appropriate award of liquidated damages based on the Government's records of the hours worked and the back pay owed?

## INTRODUCTION

From January 2002 through May 2004, the Government required thousands of employees to train for six days a week at its Federal Law Enforcement Training Center in Glynco, GA. PSOF[1] ¶1. Despite being aware that the Fair Labor Standards Act ("FLSA") required overtime wages for the sixth day of training, the Government refused to pay them overtime wages.

Plaintiffs in this case are a group of Border Patrol agents that trained at the FLETC from July 2003 through May 2004. They trained six days a week, and the Government admits that at the time it knew the FLSA required it to pay overtime. Still, it paid them no overtime.

In a companion case before this Court, *Moreno v. U.S.*, 05-142 (Judge Firestone), the Government's defense for not paying overtime for the sixth day of training is that it did not have "official" notice of its FLSA obligation to pay overtime for the sixth day of training in July 2003, even though it had actual notice long before. In this case, where the training took place after July 2003, the Government cannot make even that argument. The only reason the Government can muster for not paying Plaintiffs overtime is that it did not know they were training. That claim is frivolous.

## FACTS

### A. Plaintiffs Were Required to Train for Six Days a Week

Plaintiffs are a group of current and former U.S. Government employees who trained at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. PSOF ¶2. They were members of four classes of Border Patrol agents required to perform entry-level training at the FLETC between July 17, 2003 and May 21, 2004. PSOF ¶3. During the classes, the Government required Plaintiffs to train six eight-hour days a week for the duration of their

[1] PSOF ¶ _ refer's to the paragraph associated with Plaintiffs' Proposed Findings of Uncontroverted Facts.

training. PSOF ¶4. The sixth day of training was a scheduled part of the training program. PSOF ¶5. This sixth eight-hour day resulted in Plaintiffs working more than 40 hours in a workweek. PSOF ¶6.

The Chief of Border Patrol made the decision to send Plaintiffs to the six-day-a-week training at the FLETC. PSOF ¶7. Assistant Chiefs of Border Patrol were aware that the Plaintiffs were training at the FLETC six days a week, as was management of the Border Patrol Academy in South Carolina and the Director himself. PSOF ¶8. The Chief Patrol Agent oversaw the training schedule for Plaintiffs. PSOF ¶9. Government employees from the Border Patrol Academy and the FLETC coordinated Plaintiffs' training at the FLETC. PSOF ¶10. While training at the FLECT Plaintiffs were required to submit weekly time sheets to their managers. PSOF ¶11.

**B. The FLSA Requires Overtime Pay for Plaintiffs' Sixth Day of Training**

The Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), required the Government to pay Plaintiffs overtime for the sixth day of training at the FLETC. PSOF ¶12. Defendant admits that the FLSA required it to pay Plaintiffs overtime wages for the sixth eight-hour day of training. PSOF ¶13. Indeed, the obligation is clear from the Government's own regulations which require FLSA overtime wages for regularly scheduled hours during entry level training. PSOF ¶14 (explaining that 5 C.F.R. §551.423(a) requires FLSA overtime wages for training during regular working hours, and that 29 C.F.R. §551.421 defines regular working hours to include regularly scheduled overtime.)

### C. At the Time Plaintiffs Trained, the Government Knew that the FLSA Required It to Pay Plaintiffs Overtime Wages for the Sixth Day of Training

There is no question that the Government knew in July 2003 that it was obligated to pay Plaintiffs overtime wages for the sixth day of regularly scheduled training at the FLETC. PSOF ¶15. In July 2003, the Office of Personnel Management ("OPM") posted notice, a "Q&A", on its website explaining that the law required the Government to pay overtime for regularly scheduled overtime during training at the FLETC. PSOF ¶16. OPM's guidance was authoritative as it is the Government entity charged with promulgating regulations governing the Government's FLSA obligations. PSOF ¶17. OPM's July 2003 Q&A website was the culmination of a long process of notifying Government agencies of their obligation to pay overtime for the sixth day of training at the FLETC. PSOF ¶18.

The Government's obligation under the FLSA to pay Plaintiffs overtime for the sixth day of regularly scheduled training is clear from regulations the Government promulgated in 1980. The Government is in the unique position of being responsible for promulgating the regulations governing its own FLSA obligations. 29 U.S.C. §204(f); *see* 5 C.F.R. Part 551; PSOF ¶19. Pursuant to this authority, the Government promulgated 5 C.F.R. §551.423. PSOF ¶20. That regulation provides that "Time spent in training during regular working hours shall be considered hours of work." 5 C.F.R. 551.423(a)(1); PSOF ¶21. Two sections away, on the same page of the published C.F.R., section 551.421 defines "regular working hours" to include regularly scheduled overtime. 45 F.R. 85664 (Dec. 30, 1980); 5 C.F.R. §551.421; PSOF ¶22.

In promulgating 5 C.F.R. §551.423, the Government specifically addressed the issue of whether regularly scheduled training constituted hours of work for FLSA purposes. The promulgation process for these regulations involved an extensive comment period. PSOF ¶23.

Defendant's notes from that process show that Defendant received extensive comments requesting that it define the term "regular working hours" to avoid ambiguity. PSOF ¶24(letter dated July 13, 1978 from D.E.Lemon, Director of Personnel Management from the U.S. Department of Labor stating that "[w]e strongly urge than an attempt be made to redefine the 'workday' of this regulation so that it does relate directly both to the 'workday' of Part 610 and to 'an employee's regular working hours' as used elsewhere in the draft.")(memorandum dated July 26, 1978 from John J. Laffery, Director New York Region U.S. Civil Service Commission stating that "[t]he term 'regular working hours,' as it is used in Section 551.421, 551.422, 551.423, 551.425, is not defined. A clear definition is necessary because the regulations covering time spent in ...training... appear to be inapplicable to intermittent employees, who have no 'regular working hours,'[.]").

In fact, the Government "interpreted the term 'regular working hours' to include regularly scheduled overtime as far back as 1976." PSOF ¶25 ("I have found in the old FLSA history files that OPM (Dwight Brown) interpreted the term 'regular working hours' to include regularly scheduled overtime pay as far back as 1976."). Regulation 551.421 was simply memorializing the Government's longstanding practice.

In November 2002, OPM began informing agencies that the FLSA required overtime wages for the sixth day of training at the FLETC. PSOF ¶26. The six day training schedule was a new event at the FLETC. PSOF ¶27. OPM's guidance was in response to repeated inquiries by Government employees about whether overtime pay was required for the sixth day of training at FLETC. PSOF ¶28. In a series of e-mails to various Government entities beginning in November 2002, OPM explained in detail that 5 C.F.R. §551.423 required FLSA overtime to be

paid for regular working hours, and that §551.421 defined regular working hours to include regularly scheduled overtime, like the sixth day of training at FLETC. PSOF ¶29.

Some agencies had read and complied with the regulations from the very outset of the FLETC's six-day training program. PSOF ¶30. For example, the National Park Service Park Police (a unit of the Department of the Interior and National Park Service), the Capitol Police, and the U.S. Mint (part of the Department of Treasury) all paid their agents training at the FLETC overtime for the sixth day of training at the time of the training. PSOF ¶30.

By early 2003, OPM's position was widely known among the Government's many entities that used the FLETC. PSOF ¶¶31-32. For example, the Forest Service received written notice of OPM's position that the FLSA requires overtime pay for the sixth day of training in December 2002; the Immigration and Naturalization Service ("INS") and the Department of Justice ("DOJ") received written notice of the position in February 2003 . PSOF ¶31. The newly-formed Department of Homeland Security ("DHS") received written notice of OPM's position in March 2003 and promptly forwarded the information to the heads of its various components, including Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE"). PSOF ¶32.

In March 2003, OPM intended to post a Q&A on its website explaining the obligation to pay FLSA overtime for the sixth day of training at the FLETC. PSOF ¶33. At the urging of DHS, OPM delayed the posting. PSOF ¶34. Finally, in July 2003, OPM posted the Q&A on its website explaining that the FLSA required overtime pay for the sixth day of regularly scheduled training at the FLETC. PSOF ¶35.

### 1. CBP Knew the Government Was Obligated to Pay FLSA Overtime

The Border Patrol is part of U.S. Customs and Border Protection ("CBP"), which is in turn a component of DHS. Border Patrol is one of three entities that make up CBP. PSOF ¶36. CBP is itself a component of DHS. PSOF ¶37. DHS was created on November 25, 2002. PSOF ¶38. CBP came under the auspices of DHS in March 2003. PSOF ¶39. Prior to being part of the DHS the CBP was called U.S. Customs Service and was a bureau in the Department of Treasury. PSOF ¶40. The INS became part of DHS in March 2003. PSOF ¶41. In March 2003, the INS functions were absorbed into Immigration and Customs Enforcement ('ICE"), CBP, and Custom and Immigration Services ("CIS"). PSOF ¶42. All these entities are part of DHS. PSOF ¶43.

In March 2003, CBP's compensation staff handled compensation issues for Border Patrol. PSOF ¶44. Ronelle Rotterman was the person at CBP handling compensation issues. PSOF ¶45. If Ms. Rotterman needed guidance on compensation issues, she could look to Melissa Allen, the Acting Chief, Human Capital Officer at DHS, or she could contact OPM directly for guidance. PSOF ¶46.

Ms. Rotterman knew that the FLSA required overtime pay for the sixth training at the FLETC. PSOF ¶47. By March 2003, CBP knew OPM's position. PSOF ¶48. Robert M. Smith, Ms. Rotterman's direct report and the Director of Human Resources for the U.S. Customs Service, had received written notification of OPM's position and a copy of the Q&A that was eventually posted on OPM's website in July 2003. PSOF ¶49. Indeed, Mr. Smith's supervisor, Deborah Spero, the Deputy Commissioner for Customs received the same information. PSOF ¶50. Moreover, the two sources Ms. Rotterman looked to for advice, Ms. Allen and OPM, were both aware of OPM's position in March 2003. PSOF ¶51.

By July 2003, all the relevant Government components knew that the FLSA required overtime pay for the sixth day of entry level training at the FLETC. Ms. Rotterman at CBP knew that OPM had posted its Q&A stating that the FLSA required overtime pay for the sixth day of training at the FLETC. PSOF ¶52. DHS also knew of the posting, as did INS, DOJ, FLETC, US Customs Service, CIS, and ICE. PSOF ¶53.

### D. The Government Did Not Pay the Plaintiffs for the Sixth Day of Training

Despite its knowledge that the FLSA required overtime pay, Defendant did not pay Plaintiffs overtime wages for the sixth day of training at the FLETC. PSOF ¶54. When Thomas Porta brought suit in April 2005, the Government continued to withhold the overtime pay it knew was due. PSOF ¶55. When Andrew Barth filed suit on July 18, 2005, the Government continued withholding the overtime pay. PSOF ¶56. Even after 53 Plaintiffs joined the Porta and Barth suits, the Government refused to pay overtime. PSOF ¶57.

On April 24, 2006, the Court ordered the Government to issue notice of the opportunity to join this action to the class. PSOF ¶58. The Government sent a Court-approved approved notice to the class by May 30, 2006. PSOF ¶59.

Days after it sent the Court-ordered notice, the Government began unilateral communications with non-Plaintiff class members in a last ditch effort to avoid FLSA liability. Sometime in early June 2006, the Government began to make partial payments to some class members without the Court or Plaintiffs' knowledge or consent. PSOF ¶60. The Government intended to make the partial payments to class members who had not yet joined the action, even though the 60-day opt-in period had just begun. PSOF ¶61.

The Government's partial payment was designed to chill participation in this action by offering partial payment and discriminating against Plaintiffs.[2] PSOF ¶62. The payment was sent to class members as they were receiving notice of the opportunity to join this action. The timing of the partial payment caused confusion among the class as to whether they were still eligible to join this action to recover payment. PSOF ¶63. On class members' pay statements, the Government listed the payment it made as "liq.damages/int.backpay". PSOF ¶64. But the payment was not accompanied by an accounting that would allow class members to understand how the payment was calculated. PSOF ¶65. Moreover, by not offering payment to Plaintiffs, the Government sent the message that those who joined the case would not receive even the partial payment.

Upon learning of the Government's actions, the Court ordered the Government to send a remedial notice to class members explaining that they had rights remaining to be redeemed even if they had received the Government's partial payment. PSOF ¶66. The Court ordered the Government to mail the remedial notices to the class plaintiffs by July 12, 2006, and extended the opt-in period until September 10, 2006. PSOF ¶67. The Court also ordered the Government to pay Plaintiffs the same partial payment it made to non-plaintiff class members. PSOF ¶68.

In defiance of the Court's Order, the Government continues to discriminate against some Plaintiffs by withholding even the partial payment it made to class. On June 20, 2006, the Court

---

[2] The partial payment that the Government sent to the class during the notice period was the subject of briefing and a Court conference. See Defendant's June 15, 2006 Notice of Agency Action, Docket No. 18, PX 22; Plaintiffs' June 19, 2006 Objections to Agency Action, Docket No. 20, PX 24; and Defendant's June 19, 2006 Reply To Plaintiffs' Objections To Defendant's June 15, 2006, Notice of Agency Action, Docket No. 21, PX 31. Plaintiffs' papers noted several instances of class members' confusion and even one member who asked to opt-out because he understood that the payment extinguished his claim. See Plaintiffs' June 19, 2006 Objections to Agency Action, Docket No. 20, at page 3, PX 24 (05-14210 Docket No. 20). The Court attempted to remedy the misconduct by ordering the Government to (1) make the same partial payment to Plaintiffs that it made to non-plaintiff class members; (2) send out new notices to the class explaining that they have rights remaining after the payment; and (3) extend the opt-in period it was making in its Order. The Court also reserved judgment on Plaintiffs application for costs and fees on the motion. June 20, 2006 Order (05-14210, Docket No. 22), PX 23.

Ordered that "[t]o the extent OPM had the authority to continue to pay back pay to individual Border Patrol Agents who attended training at FLETC for six days a week, eight hours a day for several weeks, but were not paid for the sixth day, the named plaintiffs will also be entitled to such payments." PSOF ¶69. However, Plaintiffs William Griffith and John Joseph Turko have not been paid even the partial payment. PSOF ¶70. The Government is aware of its failure to pay Griffith and Turko, but has made no effort to remedy its violation of the Court's Order. See Sweeney Declaration ¶29.

**E. Plaintiffs Claims Are Timely**

Plaintiffs filed their consents to sue within the FLSA's statute of limitations. PSOF ¶72. All the Plaintiffs in the original Barth action filed their consents to sue within two years of training at the FLETC, as did Thomas Porta. PSOF ¶73. With three exceptions, Plaintiffs Griffith, Turko and Barron, the remainder of the Plaintiffs filed their consents to sue in response to the Court-ordered notice in this matter within three years of training at the FLETC. PSOF ¶74.

Plaintiff Griffith never received the Court-ordered notice of this action. PSOF ¶75. He was due notice because he trained at the FLETC for six days a week from February 5, 2004 through May 21, 2004. PSOF ¶76. He did not receive notice even though his address is the same as his address when he trained at the FLETC. PSOF ¶77. Moreover, Mr. Griffith is currently a U.S. Government employee. PSOF ¶78. Moreover, the Government has had Mr. Griffith's social security number since he began working with it. PSOF ¶79. Until Mr. Griffith heard about this suit, he relied on the Government's representation that he was not due overtime for the sixth day of training. PSOF ¶80. He filed a consent to sue on July 20, 2007, promptly after becoming aware of this case. PSOF ¶81.

Plaintiff Joseph Turko also did not receive notice of this action. PSOF ¶82. Like Plaintiff Griffith, he was due notice because he trained at the FLETC for six days a week from February 5, 2004 through May 21, 2004. PSOF ¶83. Based on the Government's practices, Mr. Turko believed that he was not due overtime under the law and did not file suit. PSOF ¶84. The Government had Mr. Turko's social number since he began working with it. PSOF ¶85. Mr. Turko filed a consent to sue in this action on April 25, 2007, promptly after becoming aware of it. PSOF ¶86. Accordingly, part of his claims are within three years of when he filed his consent to sue. PSOF ¶87.

Neither Plaintiff Turko nor Griffith ever received any payment for their sixth day of training at the FLETC. PSOF ¶88.

Plaintiff Patricia Barron filed her consent to sue on August 11, 2006, shortly after the Government sent the Court-ordered remedial notice. PSOF ¶89. She had trained at the FLETC from July 17, 2003 through August 29, 2003. PSOF ¶90. Three of the seven weeks she trained were within three years of when she filed her consent to sue. PSOF ¶91. The rest would have fallen within three years of the consent to sue if she had filed her consent in response to the initial Court-ordered notice.

## PROCEDURAL HISTORY

On April 11, 2005 Plaintiff Porta brought his case for overtime in *Moreno et al. v. U.S.*, 05 Civ. 142C, by filing his consent to sue form.. Docket No. 6. On April 3, 2006 Plaintiff Porta's claim was severed from *Moreno v. U.S.*. Order, Docket No. 38. The case was consolidated with *Barth, et al. v. U.S.*, 05 Civ. 759C on April 19, 2006. Order, Docket No. 3.

## ARGUMENT

### A. Summary Judgment Principles

The Federal Rules of Civil Procedure encourage the use of summary judgment to narrow issues for trial and eliminate matters that do not involve genuine issues of material fact. *Celotex v. Catrett*, 477 U.S. 317, 327 (1986). The Rules provide that a party may move for summary judgment on any part of a claim or counter claim, with or without affidavits. Fed. R. Civ. P. 56(a). A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

### B. FLSA Principles

"The principle congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . . [and to ensure that employees] would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (citations omitted). To protect against excessive hours of work, the statute requires that employers pay employees for hours in excess of 40 in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1).

The FLSA was designed "to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' ... Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. " *A.H. Phillips v. Walling,* 324 U.S. 490, at 493 (1945); *see also Powell v. U.S. Cartridge Co.,* 339 U.S. 497 (1950); *U.S. v. Rosenwasser,* 323 U.S. 360, 363(1945)("no doubt as to the Congressional intention to include all employees within the scope of the Act unless specifically excluded.").

The FLSA's overtime rules, "like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Giles v. City of New York*, 41 F.Supp.2d 308, 316 (S.D.N.Y. 1999)(quoting *Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.*, 321 U.S. 590 (1944)).

**C. Defendant Is Liable for Its FLSA Violations**

A FLSA case may be brought against an employer under 29 U.S.C. §207. "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency. 29 U.S.C.§203(d). 29 U.S.C. §203(x) defines Public Agency as "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; or any interstate governmental agency." The Government admits that Plaintiffs were employees for the purpose of FLSA. PSOF ¶12.

There is no question that the FLSA required the Government to pay Plaintiffs overtime wages for the sixth day of training at the FLETC. The Government admitted as much in its Notice of Agency Action:

> The Office of Personnel Management (OPM) determined that FLSA nonexempt employees are entitled to overtime pay for certain hours spent in basic training at the Federal Law Enforcement Training Center (FLETC). … The agency is aware this payment is overdue ...

Notice of Agency Action, at pages 4-5, Docket No. 18, PX[3] 22. In the same document, the Government represented:

[3] PX __ refers to Plaintiffs' exhibit number.

> [The U.S.] believes that ultimately, the hours of entry-level training at FLETC and the base amount of backpay allegedly due to plaintiffs will not be in dispute in this action. The essential legal and factual dispute in this action will be upon defendant's defense of good faith, and the Court's discretion to award liquidated damages in an amount less than the amount of backpay claimed.

*Id.* at 1-3. The Government went on to make partial payments to class members. The payments, however, excluded the liquidated damages component required under by 29 U.S.C. §216(b).

To prevail on a FLSA claim for an overtime activity suffered or permitted to be performed, Plaintiffs must show they "performed work for which [they] were not properly compensated." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946).

The FLSA requires employers to pay overtime to employees who are 'employed' more than forty hours per week." 29 U.S.C. §207(a)(1). The term "employ" means "to engage a person in an activity that is for the benefit of an agency, and includes any hours of work that are suffered or permitted." 5 C.F.R §551.104; *see also* 29 U.S.C. §203(g). "Suffered or permitted work means any work performed by an employee for the benefit of an agency, whether requested or not, provided the employee's supervisor knows or has reason to believe that the work is being performed and has an opportunity to prevent the work from being performed." 5 C.F.R. §551.104 (emphasis added).

Knowledge by supervisors of employee's overtime is imputed to the employer for purposes of determining employer's liability under Fair Labor Standards Act (FLSA). *Cunningham v. Gibson Elec. Co., Inc.*, 43 F.Supp.2d 965, 975 (N.D.Ill. 1999) *citing Reich v. Department of Conservation & Natural Resources*, 28 F.3d 1076, 1082 (11th Cir. 1994). "[A]n agency is responsible for exercising appropriate controls to assure that only that work for which it intends to make payment is performed." 5 C.F.R. §551.402(a); see also 29 C.F.R.

§785.13(2005); *Forrester Roth's I.G.A. Foodliner, Inc..*, 646 F.2d 413, 414 (9th Cir. 1981). "If an employer knows or has reason to believe that the employee continues to work," hours will count for the purpose of overtime under the FLSA." *Bull v. U.S.*, 68 Fed. Cl. 212 (2005) *citing Reich v. Department of Conservation & Natural Resources*, 28 F.3d 1076, 1082 (11th Cir.1994); *see also* 29 C.F.R. §785.13. "[A] court need only inquire whether, under the circumstances, the employer either had knowledge of overtime hours being worked or had the opportunity through reasonable diligence to acquire knowledge." *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997).

The Government was aware that Plaintiffs were training at the FLETC on a six-day a week schedule. The Chief of Border Patrol himself ordered them to perform the training. PSOF ¶7. Border Patrol management was aware Plaintiffs were training six days a week, from assistant chiefs to the Border Patrol Academy management to the Director himself. PSOF ¶8. Border Patrol management scheduled and coordinated the training. PSOF ¶9. Plaintiffs submitted weekly time sheets to their managers while conducting the training. PSOF ¶11. In addition, FLETC personnel were aware that Plaintiffs were training for six days. PSOF ¶10.

Having failed to pay overtime wages it knew were due, the Government violated the FLSA. 29 U.S.C. §207(a)(1)

**1. The Government Is Liable for Liquidated Damages**

Liquidated damages are an inherent and unwaiveable part of FLSA damages. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 115-116 (1946) ("Congress adopted a mandatory requirement that the employer pay a sum in liquidated damages equal to the unpaid wages so as to compensate the injured employee for the retention of his pay."); *Hohnke v. United States*, 69 Fed. Cl. 170 (2005)(finding a waiver of FLSA claims, including liquidated damages, invalid); *McConnell v. Applied Performance Technologies, Inc.*, 2002 WL 483540, *6 (S.D.Ohio 2002)

(finding invalid a settlement agreement waiving FLSA claims). An employee's right to liquidated damages cannot be waived without supervision of the Department of Labor or a court of competent jurisdiction. *D.A. Schulte*, 328 U.S. at 114-116; *Hohnke v. U.S.*, 69 Fed. Cl. 170, 176 (2005). An employer found to have violated the FLSA, 29 U.S.C. §§206 and 207, "shall be liable" to the employee for unpaid overtime and "an additional equal amount as liquidated damages." 29 U.S.C. §216(b); *see*, *Bull v. U.S.*, 68 Fed. Cl. 212, 228 (2005)(internal citations omitted). Consistent with the statute's plain language, there is a strong presumption that where an employer violates the FLSA, it is liable for double damages, *i.e.*, liquidated damages in an amount equal to the back pay owed. *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 71 (2nd Cir. 1997); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 947-48 (2nd Cir. 1959); *Adams v. U.S.*, 46 Fed. Cl. 616, 620 (2000) ("the employer is presumed to be liable for liquidated damages unless it can establish a defense based on good faith and reasonable conduct"); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003)(liquidated damages are the norm and single damages the exception); *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1223 (7th Cir. 1995)(same); *see also*, *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840-41 (6th Cir. 2002)(holding that the district court abused its discretion in failing to award liquidated damages); *Martin v. Cooper Elec. Supply*, 940 F.2d. 896, 908 (3rd Cir. 1991) (same).

The purpose of liquidated damages is compensatory, not punitive. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Reich v. Southern New England Telecom. Corp.*, 121 F.3d 58, 71 (2nd Cir. 1997), *see e.g. Bull v. U.S.*, 68 Fed. Cl. 212, 274-276 (2005); *see also Martin v. Indiana Michigan Power Co.*, 292 F.Supp.2d 947, 960 (W.D.Mich. 2002) ("Section 216(b) provides that the employee is entitled to receive, as a remedy, '*unpaid* overtime compensation" and "an additional equal amount as liquidated damages.'"); *Fletcher v. Grinnell*

*Bros.*, 64 F.Supp. 778, 780 (D. Mich. 1946) ("Upon failure to pay minimum wages provided by the Fair Labor Standards Act, the employer's liability to pay the liquidated damages accrues, giving the employee a vested right thereto regardless of whether or not the employee is forced to institute suit to recover the amount due.").

A defendant may only be relieved from the FLSA's liquidated damages when it can prove that its failure to pay wages was "in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." 29 U.S.C. §260; *see Caserta*, 273 F.2d 943. Although the good faith exception exists, the employer's burden of proof is "a difficult one to meet." *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2nd Cir. 1987); *Laffey v. Nothwest Airlines, Inc.,* 567 F.2d. 429, 464-65 (D.C. Cir. 1976); *Bull v. U.S.* 68 Fed. Cl. 212, 275 (2005).

"'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Reich,* 121 F.3d at 71; *accord Herman v. RSR Sec. Services Ltd.* 172 F.3d 132, 142 (2nd Cir 1999). Reasonable grounds is an objective standard and "ignorance is no defense to a claim for liquidated damages." *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860, 871 (S.D.N.Y. 1984); *see also*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986) ("A good heart but an empty head does not produce a defense [to the double damage rule]"); *Bull v. U.S.*, Fed. Cl. 212, 275 (2005). Even where an employer meets its burden, courts have the discretion to require it to pay liquidated damages if appropriate. 29 U.S.C. §260; *see, e.g., Bernard v. IBP, Inc.*, 154 F.3d 259, 267 (5th Cir. 1998).

The Government cannot show that it acted in good faith in denying Plaintiffs their overtime pay. The Government admits it required Plaintiffs to work a six eight-hour days at the FLETC; it admits that it knew Plaintiffs were training six days a week at the FLETC; and it admits that it knew that the law required it to pay overtime for the sixth day of training. PSOF ¶¶4-11, 15. Indeed, by July 2003, the legal obligation had been made public on OPM's website. PSOF ¶15. By that time all the relevant components of the Government knew that the FLSA required overtime to be paid for the sixth day of training at the FLETC. PSOF ¶¶15, 26, 29-35. Having knowingly violated the FLSA, the Government cannot show it is entitled to relief from liquidated damages. 29 U.S.C. §260; *Caserta*, 273 F.2d 943; *Brock,* 833 F.2d at 19; *Laffey.,* 567 F.2d at 464-65; *Bull,* 68 Fed. Cl. at 275.

The only reason the Government has offered for its failure to pay, that it was unaware that Plaintiffs were training six days a week, is incredible. The Government ordered Plaintiffs to work the hours. PSOF ¶¶1-4. The sixth day of training was part of a regularly scheduled training program that the Government had run for more than two years. PSOF ¶1. Plaintiffs even reported the overtime hours to their supervisors. PSOF ¶11. The law is clear that an employer has responsibility for overtime hours which it "controlled or required." *Bull v. U.S.*, 68 Fed.Cl. 212, 224 -225 (2005). Allowing the Government to escape FLSA liability for work it required, supervised and recorded would strip the FLSA of its remedial purpose. For the Government to argue that it acted in good faith because it did not know Plaintiffs were working overtime is disingenuous.

The Government's position is further belied by its actions. Even after the Government admits it knew that Plaintiffs had trained at the FLETC for six days a week, it took no action to make payment. PSOF ¶¶54-57. Instead, the Government contested these lawsuits. The

Government only made a partial payment after the Court ordered it to send notice of the opportunity to join this case to the class. PSOF ¶¶58-60. That action was designed to avoid paying the liability. PSOF ¶¶61-62.

The Government cannot meet its burden that it acted in "good faith" in failing to pay Plaintiffs the overtime wages due under the FLSA. It intentionally denied Plaintiffs overtime pay it knew the FLSA obligated it to pay. Under such circumstances, the FLSA requires that it pay Plaintiffs liquidated damages in an amount equal to the back wages owed. 29 U.S.C. §216(b); 29 C.F.R. §790.22(b) (2005) ("If ... the employer does not show to the satisfaction of the court that he has met the two conditions mentioned above, the court is given no discretion by the statute, and it continues to be the duty of the court to award liquidated damages.")

**D. A Three Year Statute of Limitations Should Apply**

The FLSA applies a three year statute of limitations to claims where the employer's violation was willful.[4] *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988); *Bull v. U.S.*, 68 Fed. Cl. 212, 228, 272 (2005); *Corrigan v. U.S.*, 68 Fed. Cl. 589, 593 at fn5 (2005); *Angelo v. U.S.*, 57 Fed. Cl. 100, 108 (2003); *Adams v. U.S.*, 46 Fed. Cl. 616, 619 (2000). If the employer recklessly disregarded its FLSA obligations, a three-year statute of limitations is appropriate. *Id.*

Willfulness does not require bad faith, only a showing of knowledge or recklessness. *McLaughlin,* 486 U.S. at 133. Willfulness includes "the 'failure to make adequate inquiry into whether conduct is in compliance with the Act.'" *Bull v. U.S.*, 68 Fed. Cl. at 272 - 73 *citing* 5 C.F.R. § 551.104; *see Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 141-42 (2nd Cir.1999)

[4] 29 U.S.C. §255(a) states in part: Any action commenced ... after May 14, 1947 to enforce any cause of action for ... unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended[,] ... [on a] cause of action [that] accrues ... after May 14, 1947-may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

(reliance on questionable authority is reckless disregard supporting a three-year statute of limitations). *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 40-41 (2nd Cir. 1995)(where the law is clear violations are willful, arguments to the contrary notwithstanding); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1296 (3rd Cir. 1991)(violation is willful where employer has information that practices violated the FLSA but disregarded it); *Dole v. Elliot Travel & Tours, Inc.,* 942 F.2d 962, 966-67 (6th Cir. 1991)(where employer receives notice of violation and continues illegal practice, violation is willful); *Reich v. Monfort Inc.*, 144 F.3d 1329, 1334-35 (10th Cir. 1998)(finding violations willful where employer has notice but raised a defense).

There is no question that the Government knew that the FLSA required it to pay overtime for the sixth day of entry level training at the FLETC. Its own regulations on the issue were clear and promulgated in 1980. PSOF ¶¶15-25. From November 2002, the Government confirmed in writing that the regulations required it to pay FLSA overtime for the sixth day of training. PSOF ¶26. It began informing individual agencies of the responsibility in December 2002. PSOF ¶¶26-31. By March 2003, DHS, CBP, INS, DOJ, FLETC, and the US Customs Service all knew that the regulations required FLSA overtime pay for the sixth day of training at the FLETC. PSOF ¶¶26-53. By July 2003, OPM had publicly posted a detailed legal explanation of the obligation. PSOF ¶35.

The Government has already admitted that it had knowledge of its FLSA obligations in July 2003. In *Moreno v. U.S.*, a companion case to this one, the Government argued that despite ongoing notice of its FLSA violation, it could not be charged with knowledge until July 2003 when OPM posted its Q&A publicly posting the explanation of how the regulations required FLSA overtime for the sixth day of training. Even under the Government's unreasonable interpretation that it required the website posting to have actual knowledge of its FLSA

obligations, the Government had knowledge throughout the period that Plaintiffs trained.

Despite its knowledge, the Government did not pay Plaintiffs overtime. It did not make any overtime payment to any of the class until June 2006, more than 2 years after the training. PSOF ¶¶54-61. When it finally made a payment, it was a partial payment of its FLSA liability designed to interfere with the Court's order that the class receive notice of the opportunity to join the case. PSOF ¶¶62-63. Although the partial payment did not include an accounting, the Government listed it on pay stubs as "liq.damages/int.backpay". PSOF ¶64-65. Moreover, in making the partial payment, the Government excluded the Plaintiffs that had joined the case in violation of the FLSA's anti-discrimination provisions. PSOF ¶¶68-69. It only made the partial payment to those Plaintiffs after the Court ordered it to do so. PSOF ¶68-69.

Unable to legitimately deny overtime pay under the law, Defendant claims that it was unaware that its own employees were working at the FLETC. However, Defendant admits that it required Plaintiffs to train for six days a week at the FLETC; it admits that its management, both at Border Patrol and FLETC, knew Plaintiffs were training on a six-day a week schedule at the FLETC; it admits that Plaintiffs were required to submit time sheets to management; it admits that it paid Plaintiffs for their work at the FLETC – less pay for the sixth day of work. The Government's claim is contrary to its own evidence.

The Government willfully violated its FLSA obligations. It had knowledge that the FLSA required it to pay overtime for the sixth day of training at the FLETC. Despite the knowledge, it did not pay Plaintiffs overtime. Regardless of its motivation, the Government willfully violated the FLSA. Accordingly, a three-year statute of limitations should apply to Plaintiffs claims. *McLaughlin,* 486 U.S. at 135; *Bull*, 68 Fed. Cl. at 228, 272; *Corrigan*, 68 Fed. Cl. at 593, fn5; *Angelo v. U.S.*, 57 Fed. Cl. 100, 108 (2003); *Adams*, 46 Fed. Cl. at 619.

**E. Plaintiff Claims for Liquidated Damages Are Timely**

All Plaintiffs claims are timely. Of the 95 Plaintiffs, 53 filed consents to sue within two years of their training and 41 filed their consents within three years. PSOF ¶¶57, 73. Three Plaintiffs, Barron, Griffith and Turko, filed consents to sue more than three years after some of their claims. PSOF ¶74. In each case, the delay in filing was due to the Government's actions, and their claims should be allowed to go forward.

Ms. Barron trained at the FLETC from July 17, 2003 through August 29, 2003. PSOF ¶90. She filed her consent to sue on August 11, 2006, in response to the remedial notice the Court ordered in response to the Government's attempt to scuttle the initial notice. PSOF ¶89. Four of the eight weeks that she trained do not fall within the three years prior to her filing her consent to sue. The Government should be equitably estopped from claiming the statute of limitations bars part of her claim.

Equitable estoppel may be applied against the Government to preclude the application of the statute of limitations. *See John v. U.S.*, 77 Fed. Cl. 788, 812-813 (2007); *Kaeper Machine, Inc. v. U.S.*, 74 Fed. Cl. 1, 7-8 (2006). "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Cmty. Health Servs.,* 467 U.S. 51, 59 (1984); *See John v. U.S.*, 77 Fed. Cl. 788, 812-813 (2007); *Kaeper Machine, Inc. v. U.S.*, 74 Fed. Cl. 1, 7-8 (2006). In order to establish equitable estoppel against the Government a party must establish four essential elements: (1) the Government must know the true facts; (2) the government must intend that its conduct will be acted upon or must so act that the party claiming estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the part asserting estoppel must rely on the government's conduct to its detriment." *Kaeper Machine, Inc. v. U.S.*, 74 Fed. Cl. 1, 7-8 (2006) *citing American Electronic Laboratories, Inc. v.*

*United States,* 774 F.2d 1110, 1113 (Fed.Cir.1985) and *Advanced Materials v. Perry,* 108 F.3d 307, 311-312 (Fed.Cir.1997).

Here the Government intentionally interfered with Court-order notice in an attempt to dissuade class members from joining the case. Without informing Plaintiffs or the Court, the Government made a partial payment to the class shortly after Court-ordered notice was sent. When it made the partial payment, it did not provide an accounting that would allow class members to determine that the payment was not payment in full. The timing of the partial payment and the Government's lack of candor about it show an intent to interfere with the notice process. In fact, the Government's actions did confuse class members. PSOF ¶¶63-64. Moreover, by not offering the payment to Plaintiffs already in the case, the Government sent the message that anyone who joined would be punished for doing so. Although the Court ordered the Government to send out remedial notice on July 12, 2006, it is highly likely that many class members did not join the action or delayed their filing due to the confusion.[5]

Plaintiffs Joseph Turko and William Griffith, the other two exceptions, are entitled to full damages. As an initial matter, Plaintiffs Turko and Griffith are entitled to back pay plus interest pursuant to this Court's June 20, 2006 Order requiring the Government to pay Plaintiffs the same payments it made to non-plaintiff class members. PSOF ¶¶68-70. In violation of the Court's Order, the Government has not made any payment at all to either Plaintiff for their sixth day of training at the FLETC, even though it is aware that both are Plaintiffs and that both have not been paid. Indeed, Mr. Griffith is a current employee of the Government. PSOF ¶78. At a

[5] Counsel is filing this summary judgment motion on an expedited basis due to the breakdown of settlement negotiations. We have not been able to contact Ms. Barron to submit a declaration on her own behalf. Nevertheless, the Court can find reliance based on the facts that Ms. Barron filed her consent to sue in response to the second, remedial notice that the Court ordered due to the Government's misconduct.

minimum, the Government should immediately provide Plaintiffs Griffith and Turko with back pay plus interest under the Back Pay Act.

The Court should also toll the running on the statute of limitations for Mr. Turko's and Mr. Griffith's claims for the period between when they were due notice under the Court's orders and when they received actual notice of the action. "[C]ourts have equitable powers to manage the litigation in order to promote judicial economy and fairness to the litigants.". *De Asenci v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3rd Cir. 2003); *see also*, *Lee v. ABC Carpet and Home*, 236 F.R.D. 193, 200 (S.D.N.Y. 2006) (tolling FLSA statute of limitations for procedural delays); *Faison v. Texas EZPawn, L.P.*, 2007 WL 1481047 (S.D.Tex. 2007) (tolling the FLSA statute of limitations to allow re-filing of dismissed claims); *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, 645 F.2d 757, 759 (9th Cir. 1981)(Court tolled the statute of limitations so that potential collective action members could re-file after they were improperly solicited by Plaintiffs' counsel).

Neither Mr. Turko and Mr. Griffith received the Court-ordered notice of the opportunity to join this action. PSOF ¶¶75, 82. The Court ordered the Government to issue notice to the class. As in the related Moreno case, the Government had an obligation to "use its best efforts" to send the notice. Order, *Moreno v. U.S.*, 05-142, Docket No. 44 (April 18, 2006), PX 30. Nevertheless, the Government failed to send effective notice to Griffith or Turko.

Amazingly, at the time the notice was sent, Griffith was living at the same address as when he trained at the FLETC. PSOF ¶77. Nevertheless, the Government could not find him. Moreover, the Government had both Plaintiffs' social security numbers and could have easily performed a skip trace or other search to ensure effective notice. Such traces are common in

class litigation to ensure that proper notice is sent. Sweeney Decl., ¶ 31. The Government did not use reasonable efforts to ensure effective notice, let alone best efforts.

Both Plaintiffs promptly filed their consent to sue upon finally receiving the notice of the action that the Government was previously ordered to produce.

The Government suffers no prejudice from tolling for any of the three Plaintiffs. Any delay in filing consents to sue was due to the Government's intentional or negligent failure to abide by the Court's orders. The Government has been on notice of the claims since the Porta and Barth cases were filed in 2005. No evidence has spoiled that would have otherwise been available.

Tolling the statute for these Plaintiffs is fair and within the Court's power. *De Asenci v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3rd Cir. 2003). Plaintiffs ask that it do so to allow Plaintiffs Griffith and Turko redeem their rights.

**F. Plaintiffs Should Be Awarded $263,478.72 in Liquidated Damages and $5,680.80 in Unpaid Back Wages**

The FLSA provides that "Any employer who violates the [overtime provisions] of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. 29 U.S.C.A. §216. Defendant has produced each Plaintiff's rate of compensation during the training period and each Plaintiff's training schedule while at the FLETC. The Court needs no additional information to award damages.

Plaintiffs' overtime rates can be determined by the "perhis service records" the Government has already provided for each Plaintiff. Prehis Service Records, PX 28. The records show the Plaintiff's annual adjusted salary during the period in which he or she trained. The

regular rate for each Plaintiff can be determined by dividing the annual adjusted salary by 2087 hours. 5 U.S.C. §5504(b)(1). Each Plaintiff's overtime rate is 1.5 times the regular rate. 29 U.S.C. §207(a)(1). For Plaintiffs in class # 565, which spanned two different annual salaries, a weighted overtime rate can be determined by weighting the different salaries over the period. See Government Spreadsheet, PX 27.

The Government also produced Session Rosters that show the periods Plaintiffs trained at the FLETC in Glynco, GA. See Session Roster, PX 6. The Session Rosters show which classes Plaintiffs attended and how many weeks each class trained at the FLETC. The Government has admitted that during the training at FLETC, Plaintiffs trained 6 days a week. PSOF ¶4. Accordingly, each Saturday represents eight hours of overtime. PSOF ¶4.

Moreover, the Government produced to Plaintiffs a summary record of the data in the Session Rosters and "perhis service records." See Prehis Service Records, PX 28. For each Plaintiff, the document shows the grade and step, the annual pay rate, the number of Saturday classes, the average hourly rate, and the back wages owed. Plaintiffs have analyzed the document and agree that the information it contains is accurate.

The back wages owed are simply eight times the number of Saturdays worked, times the overtime rate.

Knowing the back wages owed, determining liquidated damages is mechanical. The FLSA provides that liquidated damages are equal to the back wages owed. 29 U.S.C. §216(b). Accordingly, each Plaintiff is owed liquidated damages in an amount equal to the back wages owed, as set forth in PX 27. In addition, Plaintiffs Griffith and Turko are each owed an additional $2,840.40 in back wages because they have not received any payment for the sixth day of

training. See Government Spreadsheet, PX 27 (showing $2,840.40 in back wages owed to Plaintiffs Griffith and Turko).

As the Government's own records establish the amount of damages owed, the Court has the ability to avoid further litigation and award the damages.

## CONCLUSION

There is no question that the Government violated the FLSA when it did not pay Plaintiffs overtime—it admits as much. Neither is there any question that the Government knew its FLSA obligations at the time Plaintiffs trained. Under these circumstances, the FLSA requires that the Government pay the back wages owed plus an equal amount of liquidated damages. Accordingly, Plaintiffs respectfully ask the Court to order the Government to pay the Plaintiffs $263,478.72 in liquidated damages as allocated in PX 26; $2,840.40 in unpaid back wages plus interest under the Back Pay Act to Mr. Griffith and Mr. Turko as previously ordered by this Court; and reasonable attorneys fees and costs to be determined at a later date.

Dated: February 8, 2008

Respectfully submitted,

/s/ Michael J.D. Sweeney

Michael J. D. Sweeney, Esq.
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
Tel: (845) 255-9370
Fax: (845) 255-8649